STEPHENS, J.
*437 ¶ 1 Robert Tyler challenges his conviction for possession of a stolen vehicle. Relying on State v. Hickman , 135 Wash.2d 97, 954 P.2d 900 (1998), he contends that the State was required to prove he engaged in all the actions that constitute "possession" of a stolen vehicle because these were listed in the to-convict jury instruction. Further arguing that the evidence is insufficient to prove he "disposed of" a stolen vehicle, Tyler argues that his conviction must be reversed and the case dismissed with prejudice.
¶ 2 We affirm Tyler's conviction, although on different grounds than those relied on by the Court of Appeals below. That court viewed the jury instructions as setting forth alternative means of possessing stolen property, which became the "law of the case" under Hickman. However, it concluded that Hickman was abrogated by Musacchio v. United States , --- U.S. ----, 136 S.Ct. 709, 193 L.Ed. 2d 639 (2016). This was error in light of our recent decision in State v. Johnson , 188 Wash.2d 742, 747, 399 P.3d 507 (2017), which confirmed that Hickman remains good law and the State is generally required to prove all elements set forth in a to-convict jury instruction. However, Hickman's law of the case rule is inapplicable here because possession of a stolen motor vehicle is a single means crime, and the given instructions did not alter that fact. Accordingly, the State was not required to prove that Tyler "disposed of" a stolen vehicle but only that he "possessed it" in one of the defined ways under RCW 9A.56.140(1). Because it is undisputed that the evidence established possession, the jury's verdict stands, and we affirm Tyler's conviction.
BACKGROUND AND PROCEDURAL HISTORY
¶ 3 A Snohomish County deputy sheriff discovered a white Honda sedan and a pickup truck parked 20 feet apart on a remote, forested service road. The deputy observed that the sedan was lifted up on a jack with the driver's side wheels elevated in the air. Upon approaching the pickup truck, the deputy encountered four individuals: Robert Tyler and Rebekah Nicholson sat in the truck's passenger compartment, Tyson Whitt was partially covered by a tarp in the bed of the truck,[1] and Anthony Coleman stood outside the truck.
¶ 4 Tyler informed the deputy that he owned the truck and produced a bill of sale. Looking into the truck's passenger cabin, the deputy observed what appeared to be stripped car parts, including a disconnected car stereo and speakers. Upon further inquiry by the deputy, Tyler claimed not to know anything about these items, neither how they came to be in his truck nor to whom they belonged. When asked who owned the Honda, Tyler replied that he did not know. Upon inspecting the sedan, the deputy observed that it seemed as if it was being stripped of its parts: bolts on the suspended wheels were partially loosened, and the stereo and front door speakers were missing. The deputy found in the sedan's ignition a key with a Chrysler brand logo and noticed that the key had been "shaved," suggesting potential vehicle theft.
¶ 5 The deputy ran a computer search of the sedan's license plate number and learned that the sedan had been reported stolen the prior day. He then contacted the vehicle's owner and confirmed that the brand of car stereo that had been in the sedan matched that of the disconnected car stereo in the passenger compartment of Tyler's truck.
¶ 5 Following further questioning, the deputy placed Tyler under arrest. During a subsequent interrogation, Tyler stated that he had observed Whitt taking parts out of the sedan, and that he deduced the sedan Whitt had been driving was stolen. Tyler denied stealing the vehicle. The State charged Tyler with one count of possession of a stolen vehicle.
¶ 6 At trial, the court's to-convict jury instruction read, in relevant part, "To convict the defendant of the crime of possessing a stolen motor vehicle, each of the following *438 elements of the crime must be proved beyond a reasonable doubt: (1) That on or about the 10th day of January, 2014, the defendant knowingly received, retained, possessed, concealed, disposed of a stolen motor vehicle." Clerk's Papers (CP) at 27 (jury instruction 4). A separate jury instruction stated, in relevant part, "Possessing a stolen motor vehicle means knowingly to receive, retain, possess, conceal, or dispose of a stolen motor vehicle." CP at 26 (jury instruction 3). Neither party objected to these instructions. The jury found Tyler guilty of possession of a stolen vehicle.
¶ 7 On appeal, Tyler argued inter alia that the " 'to convict' " jury instruction "listed as alternative means that defendant received, retained, possessed, concealed, or disposed of the stolen vehicle." Br. of Appellant at 1. Relying on the law of the case doctrine as set forth in Hickman , 135 Wash.2d 97, 954 P.2d 900, under which the State must prove all elements listed in to-convict instructions, Tyler urged that his conviction must be reversed and the case dismissed with prejudice because the evidence was insufficient to show he "disposed of" a stolen vehicle. Suppl. Br. of Pet'r at 5-6, 12-13.
¶ 8 The Court of Appeals requested additional briefing from the parties regarding the relevance of an intervening case, Musacchio , --- U.S. ----, 136 S.Ct. 709. There, the United States Supreme Court rejected application of the law of the case doctrine in a similar context and held that a sufficiency challenge should be assessed against the statutory elements of the crime charged, regardless of any heightened command in the jury instructions. Id. at 715. Concluding that Musacchio superseded Washington case law and effectively abrogated Hickman , the Court of Appeals affirmed Tyler's conviction. State v. Tyler , 195 Wash. App. 385, 399-400, 382 P.3d 699 (2016).
¶ 9 At about the same time as this case, Division One of the Court of Appeals had reached a similar conclusion in State v. Johnson , No. 73113-1-1, slip op., 2016 WL 3190525 (Wash. Ct. App. June 6, 2016) (unpublished) https://www.courts.wa.gov/opinions/pdf/731131.pdf. We granted review in Johnson to consider Musacchio 's import on Washington's law of the case doctrine, recognizing that Division Three had taken a contrary view. See State v. Jussila , 197 Wash. App. 908, 912-13, 392 P.3d 1108 (2017). We disagreed with the Court of Appeals' reliance on Musacchio , holding that "our long standing 'law of the case' doctrine continues to apply." Johnson , 188 Wash.2d at 756, 399 P.3d 507. Furthering the goals of finality, efficiency, and fairness in the judicial process, we concluded that the law of the case doctrine helps avoid prejudice to the parties and ensures that appellate courts review cases under the same rules considered by juries. Id. at 757, 399 P.3d 507. Nonetheless, we affirmed Johnson's conviction, finding the evidence sufficient when measured against the to-convict instruction.
¶ 10 We stayed consideration of Tyler's petition for review pending the final decision in Johnson. Following issuance of the Johnson opinion, we granted partial review. State v. Tyler , 189 Wash.2d 1016, 404 P.3d 497 (2017).
ANALYSIS
¶ 11 Tyler makes a number of cascading and alternative arguments, but they are all premised on the view that the jury instructions required proof that he engaged in each of the listed means of possessing a stolen motor vehicle. His main argument is that the to-convict instruction set forth several alternative means of committing possession of a stolen motor vehicle-"received, retained, possessed, concealed, disposed of." CP at 27; see Pet. for Review at 5-6; Br. of Appellant at 8; Suppl. Br. of Pet'r at 8. In his supplemental brief, he additionally argues that the instruction should be read as mandating proof of all the listed actions to establish possession of a stolen vehicle. Suppl. Br. of Pet'r at 7-8. In either case, under his argument the State would need to demonstrate sufficient evidence of all means of possession because the State did not elect a specific means and no unanimity instruction was given to the jury on alternative means. See *439 State v. Woodlyn , 188 Wash.2d 157, 164, 392 P.3d 1062 (2017). Because the evidence is insufficient to show he "disposed of" a stolen motor vehicle, concludes Tyler, his conviction must be reversed.[2]
¶ 12 The State counters that the list of ways one can possess a stolen motor vehicle (including the "disposed of" provision) is merely definitional. See RCW 9A.56.140(1) (" 'Possessing stolen property' means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto."). It reads the to-convict instruction in the context of the definitional instruction immediately preceding it and argues that the sole element the State had to prove was Tyler's "possession" of a stolen motor vehicle. See Suppl. Br. of Resp't at 3-11; see also RCW 9A.56.068(1) ("A person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle." (alteration in original) ). Accordingly, the State concludes that "[t]he law of the case doctrine does not apply in this case" to require proof that Tyler "disposed of" a stolen motor vehicle. Suppl. Br. of Resp't at 11.[3]
¶ 13 We agree with the State. Possession of a stolen vehicle is not an "alternative means" or "all means" crime, and the jury instructions in this case did not make it so. Because the instructions did not obligate the State to prove Tyler "disposed of" a stolen motor vehicle and the evidence was otherwise sufficient, we affirm Tyler's conviction. Given our resolution of the case on this basis, it is unnecessary to address the law of the case doctrine and related issues.
I. The Jury Instructions Did Not Require the Jury To Find That Tyler "Disposed of" a Stolen Vehicle To Convict Him of Possession of a Stolen Vehicle
¶ 14 Tyler acknowledges, as he must, that possession of stolen property is a single means crime. See Br. of Appellant at 7; Suppl. Br. of Pet'r at 7. The relevant statutory provisions state that "[a] person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle." RCW 9A.56.068(1) (alteration in original). " 'Possessing stolen property' means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto." RCW 9A.56.140(1). The multifaceted description of the ways in which one may possess stolen property is properly regarded as definitional, enhancing the understanding of the single means crime. See State v. Hayes , 164 Wash. App. 459, 477, 262 P.3d 538 (2011) ( RCW 9A.56.140(1) merely defines possession, and "does not create alternative means of a crime"); State v. Linehan , 147 Wash.2d 638, 646, 56 P.3d 542 (2002) ("Definition statutes do not create additional alternative means of committing an offense."); State v. Owens , 180 Wash.2d 90, 96, 323 P.3d 1030 (2014) ("the alternative means doctrine does not apply to mere definitional instructions; a statutory definition does not create a 'means within a means' "); State v. Sandholm , 184 Wash.2d 726, 734, 364 P.3d 87 (2015) ("Nor has it been found that ... definitional statutes create alternative means."); State v. Porter , 186 Wash.2d 85, 91, 375 P.3d 664 (2016) (definitional terms may be read as defining or limiting essential elements).[4]
*440 ¶ 15 Tyler nonetheless insists that the jury instructions given in this case, which included the definitional descriptions in the to-convict instruction, created either an "alternative means" crime or an "all means" crime. We disagree. We find persuasive the reasoning of the Court of Appeals in State v. Makekau , 194 Wash. App. 407, 414, 378 P.3d 577 (2016), which addressed a similar to-convict instruction that set forth the statutory definition of possession of a stolen vehicle in listing the essential elements.[5] The court in Makekau concluded that the to-convict instruction could not reasonably be read as altering the nature of the crime charged, which is a single means offense. Indeed, "the only purpose of RCW 9A.56.140(1) is definitional-to provide a better understanding of the single element stated in RCW 9A.56.068(1)." Makekau , 194 Wash. App. at 414, 378 P.3d 577. Taking a common sense approach, the court recognized that "the five terms in RCW 9A.56.140(1) are so closely related that they do not describe distinct acts apart from actually possessing the stolen vehicle, but are 'merely facets of the same criminal conduct.' Sandholm , 184 Wash.2d at 734, 364 P.3d 87. For example, it would be hard to imagine a situation where a person receives, retains, conceals, or disposes of a stolen vehicle without also possessing it at some time." Id. (citing Owens , 180 Wash.2d at 99, 323 P.3d 1030 ). Our prior decisions provide "no indication that including a list of disjunctive terms that did not constitute alternative means in the to-convict instruction transformed those terms into alternative means." Id. at 420, 378 P.3d 577.
¶ 16 Makekau is persuasive in recognizing that the mere repetition of the definitional list of "possession" in the to-convict instruction does not create alternative means. See id. at 419, 378 P.3d 577 ("If definitions in a separate instruction do not create alternative means, there is no reason that including the definitions in the to-convict instruction should change the result."). Even if the to-convict instruction is read in isolation, the four-paragraph list of the elements does not suggest that "received, retained, possessed, concealed, disposed of" are alternative means. CP at 27. The terms in the statutory definition are closely related, in that one may not retain, conceal, or dispose of a stolen vehicle without first receiving and possessing the vehicle. Tyler argues that one may possess stolen property without knowledge that it is stolen but later discard it upon learning that it is stolen, thereby upending Makekau 's interpretation. Suppl. Br. of Pet'r at 10 n.9. But Tyler fails to recognize that even this scenario supports the reasoning in Makekau, because the hypothetical defendant will possess and retain the stolen property, however briefly, between the time the theft is learned of and the time the property is disposed of.
¶ 17 Tyler cites State v. Lillard , 122 Wash. App. 422, 93 P.3d 969 (2004), for the proposition that possession of a stolen vehicle is an alternative means crime. Br. of Appellant at 6-8. Lillard , citing Hickman as authority, assumed that by listing within the to-convict instruction "the alternative definitions of 'possession' as alternative means of the offense to be proved by the State, there must be sufficient evidence to support each alternative, unless we can determine that the verdict was based on only one alternative means and that substantial evidence supports that means." 122 Wash. App. at 434-35, 93 P.3d 969. This reading of Hickman exceeds its application, which was limited to the inclusion of an additional element (venue) in a to-convict instruction. 135 Wash.2d at 105, 954 P.2d 900. It also ignores our admonition against converting definitional statutes into alternative means through inclusion in to-convict instructions. We have rejected "the notion that multiple definitions of statutory terms necessarily create either new elements or alternate means of committing a crime." State v. France , 180 Wash.2d 809, 818, 329 P.3d 864 (2014) (citing State v. Smith , 159 Wash.2d 778, 785, 154 P.3d 873 (2007) ;
*441 Linehan , 147 Wash.2d at 646, 56 P.3d 542 ); see also Makekau , 194 Wash. App. at 419, 378 P.3d 577 (" Lillard and Hayes are not persuasive because the statements in those cases about the to-convict instructions creating additional alternative means were not based on any meaningful analysis or discussion of the issue. The courts in both cases basically assumed that including the definitional terms in the to-convict instruction created alternative means. Therefore, we do not follow the holdings in those cases.").
¶ 18 Consistent with the Court of Appeals' reasoning in Makekau , we reject Tyler's argument that the inclusion of definitional language in the to-convict instruction changed the nature of the single means crime of possession of a stolen motor vehicle. The to-convict instruction is properly read as consistent with the governing statutes, under which the definitional list of how one obtains "possession" in RCW 9A.56.140(1) enhances understanding of the single means crime in RCW 9A.56.068(1).
II. Omission of the Disjunctive "or" in the To-Convict Instructions' List of How One Possesses a Stolen Motor Vehicle Does Not Distinguish this Case from Makekau and Does Not Require Proof of All Means of Possession
¶ 19 As noted, the to-convict instruction in this case set forth the definitional list of possession without including any conjunctive ("and") or disjunctive ("or") connecting language. A separate definitional instruction contained the exact list, but with "or" inserted before the final clause, "disposed of a stolen motor vehicle." Tyler relies on the omission of the word "or" to conclude that the to-convict instruction required the jury to find he committed all of the acts that constitute possession: " 'received, retained, possessed, concealed, [and] disposed of a stolen motor vehicle.' " Suppl. Br. of Pet'r at 7-8 (quoting CP at 27 with "[and]" inserted by petitioner). We reject this argument.
¶ 20 Initially, we read individual jury instructions " 'in the context of the instructions as a whole.' " State v. Williams , 162 Wash.2d 177, 182, 170 P.3d 30 (2007) (quoting State v. Pirtle , 127 Wash.2d 628, 656, 904 P.2d 245 (1995) ); see also State v. Hutchinson , 135 Wash.2d 863, 885, 959 P.2d 1061 (1998) ("The jury is presumed to read the court's instructions as a whole, in light of all other instructions."). While the to-convict instruction " 'serves as a yardstick by which the jury measures the evidence to determine guilt,' " France , 180 Wash.2d at 815, 329 P.3d 864 (quoting State v. Johnson , 180 Wash.2d 295, 306, 325 P.3d 135 (2014) ), we do not read the instruction in isolation.
¶ 21 "Due process requires the trial court to accurately instruct the jury on every element required to convict a defendant of the crimes alleged." State v. Rivas , 168 Wash. App. 882, 891, 278 P.3d 686 (2012). All elements must be contained in the to-convict instruction. See State v. Emmanuel , 42 Wash.2d 799, 816-17, 259 P.2d 845 (1953). The "reviewing court generally 'may not rely on other instructions to supply the element missing from the "to convict" instruction.' " Williams , 162 Wash.2d at 182-83, 170 P.3d 30 (quoting State v. DeRyke , 149 Wash.2d 906, 910, 73 P.3d 1000 (2003) ). Unlike in Emmanuel , there is no claim here that the to-convict instruction omitted any element. The issue here is how to read the instruction's definitional list of how one possesses stolen property. As in Williams , it is appropriate to consider the to-convict instruction in the context of the instructions as a whole. See Williams , 162 Wash.2d at 188, 170 P.3d 30 (viewing jury instructions as a whole to confirm sufficiency of to-convict instruction, while rejecting classification of underlying crime as an essential element of bail jumping).
¶ 22 Viewed in the context of the instructions as a whole, we agree with the State that the to-convict instruction is ambiguous at worst.[6] Jury instruction 3, which *442 immediately preceded the to-convict instruction, set forth clarifying definitional language, using the disjunctive "or." CP at 26. Reading the sequential instructions together would make clear that the listed definitions of possession are the same, assuming jurors actually noticed the omission of the word "or." All essential elements are contained in the to-convict instruction, and looking to related instructions supplies only definitions not an added element.[7] Reading the to-convict instruction in context with the related definitional instruction is thus consistent with our long-standing general rule. See State v. Peck , 146 Wash. 101, 106-07, 261 P. 779 (1927) (reading a definitional instruction in the context of the jury instructions as a whole, to eliminate misunderstanding); France , 180 Wash.2d at 816, 329 P.3d 864 (" '[e]ach instruction must be evaluated in the context of the instructions as a whole' " (alteration in original) (quoting State v. Benn , 120 Wash.2d 631, 654-55, 845 P.2d 289 (1993) ) ); State v. Teal , 117 Wash. App. 831, 837, 73 P.3d 402 (2003) ("The rule is well established that instructions must be read together and viewed as a whole." (citing State v. Haack , 88 Wash. App. 423, 427, 958 P.2d 1001 (1997) ) ).
¶ 23 Tyler's argument that the to-convict instruction required proof of all the ways one may possess stolen property suffers from another flaw: it reads the word "and" into the instruction. Tyler invokes a default rule of grammar whereby a serial list will be read in the conjunctive in the absence of a coordinating disjunctive. See Suppl. Br. of Pet'r at 7-8 (citing ANTONIN SCALIA & BRYAN A. GARNER , READING LAW: THE INTERPRETATION OF LEGAL TEXTS 119 (2012) ). While this default rule is sometimes apt (e.g., "I came, I saw, I conquered"), it has limited reach. Indeed, the authors Tyler cites note that a sentence omitting a conjunction may also be read as disjunctive, depending on context. SCALIA & GARNER , supra , at 119. The authors describe a statutory conjunctive list as prohibiting acts "A, B, and C," when performed together. Id. In contrast, the disjunctive list prohibits any of the acts, together or independently. Id. This latter construction aligns with RCW 9A.56.140 as enacted, prohibiting acts where one would knowingly "receive, retain, possess, conceal, or dispose of stolen property." (Emphasis added.)
¶ 24 The State notes that when given a similar opportunity, one of the treatise's authors, Justice Scalia, chose the disjunction construction when interpreting a bankruptcy code amendment that erroneously omitted the disjunctive "or," joining the majority opinion authored by Justice Kennedy. Second Suppl. Br. of Resp't at 2 (citing Lamie v. U.S. Tr. , 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed. 2d 1024 (2004) ); see Lamie , at 534-35, 124 S.Ct. 1023 ("The statute is awkward, and even ungrammatical; but that does not make it ambiguous on the point at issue. ... Here, the missing conjunction neither alters the text's substance nor obscures its meaning. This is not a case where a 'not' is missing or where an 'or' inadvertently substitutes for an 'and.' The sentence may be awkward; yet it is straightforward."). The Court found plain meaning in the amendment through an interpretation *443 that was not " 'repugnant to the rest of the statute,' " or leading to absurd results requiring the Court "to treat the text as if it were ambiguous." Id. at 536, 124 S.Ct. 1023 (quoting Chickasaw Nation v. United States , 534 U.S. 84, 94, 122 S.Ct. 528, 151 L.Ed. 2d 474 (2001) ).
¶ 25 Although the definitional statute we review here resides within a to-convict instruction, the missing disjunctive "or" mirrors the apparent scrivener's error in Lamie. We decline to accept Tyler's default rule and insert the word "and," as this would lead to an interpretation that would alter the statute and force an inconsistency between the definitional jury instruction 3 and the to-convict jury instruction 4. A more natural reading flows from considering the to-convict instruction in light of the instructions as a whole. Under such a reading, the to-convict instruction required the jury to find beyond a reasonable doubt that Tyler "possessed" a stolen motor vehicle, based on the defined meaning of that term. While the inclusion of additional definitional language in the to-convict instruction may have been awkward and generated debate (at least on appeal), the jury was adequately instructed, and its verdict should stand.
CONCLUSION
¶ 26 Reading the instructions as a whole, the jury was properly instructed on possession of a stolen motor vehicle as a single means crime. We reject Tyler's argument that the to-convict instruction created either an "alternative means" or an "all means" crime under the law of the case doctrine set forth in Hickman. We affirm Tyler's conviction.
WE CONCUR:
Johnson, J.
Madsen, J.
Owens, J.
Wiggins, J.
Gonzàlez, J.
Yu, J.

Whitt was arrested, charged, and convicted of stealing the Honda sedan. State v. Tyler , 195 Wash. App. 385, 391 n.1, 382 P.3d 699 (2016).

Tyler's sufficiency of the evidence argument is limited to the "disposed of" provision. Br. of Appellant at 8-9.

Alternatively, the State argues that the evidence was sufficient to prove Tyler "disposed of" the motor vehicle and his conviction should be affirmed on that basis. Suppl. Br. of Resp't at 12-17. While we do not disagree with the State's assessment of the evidence, when viewed in a light most favorable to the verdict, our resolution of this case makes it unnecessary to reach that issue.

Though the parties do not discuss our decision in Porter , there we considered the latter clause of RCW 9A.56.140(1) in the context of a challenge to a charging document. We concluded that the information did not need to allege that "the defendant withheld or appropriated the vehicle for the use of a person other than the true owner" because the definition of "possess" merely "defines and limits the scope of the essential elements of the crime of unlawful possession of a stolen motor vehicle." Porter , 186 Wash.2d at 87, 91, 375 P.3d 664.

The instruction required the State to prove Makekau " 'knowingly received, possessed, concealed, or disposed of' a stolen motor vehicle." 194 Wash. App. at 414 & n. 1, 378 P.3d 577. One notable difference between the instruction in Makekau and the to-convict instruction here is that the Makekau instruction repeated the disjunctive term "or" from the definitional instruction, while the to-convict instruction in Tyler's case omitted it. As discussed further in Part II below, we do not find that distinction dispositive when the instructions are considered as a whole.

At oral argument, Tyler argued that any ambiguity in to-convict instructions requires a new trial under the rule of lenity (citing State v. Kier , 164 Wash.2d 798, 194 P.3d 212 (2008) ). See Wash. Supreme Court oral argument, State v. Tyler , No. 93770-2 (Mar. 13, 2018), at 6 min., 56 sec. through 7 min., 21 sec., video recording by TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?eventID=2018031094. Kier is distinguishable, because it involved an ambiguous verdict resulting from merger of first degree robbery and second degree assault, where it was unclear whether the jury found that one of the victims was robbed as well as assaulted. 164 Wash.2d at 814, 194 P.3d 212. Here, any ambiguity in the to-convict instruction may be resolved through reasonable construction and arises in the context of one single means crime. The merger doctrine cases are inapposite.

The State points to our practice of considering the jury instructions as a whole even when considering ambiguity in self-defense instructions. Second Suppl. Br. of Resp't at 4 (citing Hutchinson , 135 Wash.2d at 885, 959 P.2d 1061 (Read together, the instructions "adequately conveyed the law of self-defense to the jury in this case. ... Accordingly, we hold the instructions, taken in their entirety, properly stated the law.") ); see also State v. Teal , 152 Wash.2d 333, 339, 96 P.3d 974 (2004) ("The rule requiring that all elements of a crime be listed in a single instruction is not violated when accomplice liability is described in a separate instruction. Here, the Court of Appeals correctly determined that jury instructions are sufficient when, read as a whole, they accurately state the law, do not mislead the jury, and permit each party to argue its theory of the case. In reading the jury instructions as a whole, including the court's erroneous accomplice liability instruction, the jury could decide Teal's guilt or innocence as an accomplice to first degree robbery." (citation omitted) (citing Emmanuel , 42 Wash.2d at 819, 259 P.2d 845 ) ).