IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 78137-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROMAN ISOIFOVICH MISHKOV, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 3, 2019 |

SCHINDLER, J. — A jury convicted Roman Isoifovich Mishkov of residential burglary, witness tampering, and two counts of misdemeanor violation of a court order prohibiting contact with Jennifer Rios. By special verdict, the jury found that Mishkov and Rios were members of the same family or household prior to or at the time he committed the crimes. Mishkov appeals the convictions for residential burglary and witness tampering and the special verdict. Mishkov contends (1) insufficient evidence supports witness tampering, (2) the law of the case doctrine required the State to prove an additional element for witness tampering and residential burglary, and (3) the court erred by denying the motion to redact judicial findings of fact in the certified copies of the no-contact orders. Mishkov also contends the court did not have the authority to impose probation conditions and erred by imposing the DNA[1] fee. We affirm the

---

[1] Deoxyribonucleic acid.

convictions and the special verdict but remand to strike the probation conditions and the DNA fee.

## FACTS

On May 23, 2017, Seattle Police Officer Gwen Morasco responded to a 911 call reporting a "domestic violence court order violation." On the way to meet Jennifer Rios at a Safeway parking lot, Officer Morasco checked the police database. Two domestic violence no-contact orders were in effect that prohibited Roman Isoifovich Mishkov from having contact with Rios.

When Officer Morasco met Rios at the Safeway parking lot, Rios "was visibly upset." Rios "had been crying — her eyes were red. She was nervous and shaky." Officer Morasco interviewed Rios and took photographs of the injuries to her hand and ankle.

Officer Morasco accompanied Rios back to her apartment. "[T]he screen was missing" on one of the windows by the front door. Officer Morasco knocked on the door and announced, "Seattle Police Department, make yourself known." No one responded. Rios gave Officer Morasco the key to the apartment. Officer Morasco used the key to try to open the door but it was "locked from the inside." Officer Morasco called for police backup. Officer Travis Duennes and Officer Alan Richards responded.

Officer Richards unlocked the back door and announced, "Seattle Police, is anybody here." "There was no response." The officers entered Rios' approximately 400-square-foot apartment. Officer Duennes "kept an eye on the closet." Officer Duennes "noticed a small gap between two items of clothing and what appeared to be bare skin and what at the time . . . looked almost like a stick-figure drawing of some

sort, which ended up being a tattoo." Officer Duennes saw "the clothing start[ ] to move slightly as though someone was breathing underneath it" and realized a person was "hiding" in the closet. The officers found a man, later identified as Roman Mishkov, in the closet.

Mishkov was wearing pants but no shirt or shoes. The officers arrested Mishkov. Mishkov said he "had clothes" in the apartment and "requested clothing." The officers "put a shirt" on Mishkov "before taking him outside."

The State charged Mishkov with domestic violence residential burglary on May 23, 2017, count 1; domestic violence felony violation of a court order entered on August 29, 2016 and a court order entered on February 27, 2017, count 2; and domestic violence malicious mischief in the third degree, count 3. The information alleged Mishkov committed the domestic violence crimes "against a family or household member." Mishkov pleaded not guilty.

Mishkov met Jason Parmalee Jr. in jail. In July 2017, Mishkov used Parmalee's jail telephone account to send messages to Rios through Parmalee's mother Tracy Flynn.

On December 12, 2017, the State filed an amended information to add charges of tampering with a witness between July 12 and July 13, 2017 and domestic violence misdemeanor violation of a court order between May 23 and July 31, 2017. The State also added two additional charges of domestic violence misdemeanor violation of a court order on May 23, 2017.

The four-day jury trial began on December 12, 2017. The State called Officer Morasco, Officer Duennes, Officer Richards, Detective Michael Lancaster, Bellevue

Police Detective Rachel Neff, and Department of Adult and Juvenile Detention Sergeant Michael Allen to testify at trial.

At the beginning of trial, the prosecutor moved to admit certified copies of the Seattle Municipal Court no-contact orders entered on August 29, 2016 and February 27, 2017. The defense moved to redact the checkmark next to the "post conviction box" and redact the two "boxes . . . that provide warnings as to consequences of violating the terms of the order." Defense counsel argued the "finding of fact" in the no-contact orders that Mishkov and Rios were "intimate partners" "should also be stricken." The court granted the request to redact the checkmark next to the postconviction box but denied the motion to redact the warnings or the finding of fact. The court admitted into evidence the partially redacted certified copies of the no-contact orders. The prosecutor displayed the no-contact orders to the jury during trial.

Officer Morasco testified that when she met Rios in the Safeway parking lot, Rios "was cooperative." Officer Morasco said, "She answered all my questions willingly. . . . [S]he was very forthright and very forthcoming." Officer Morasco testified that Rios' injuries "looked fresh" because of the blood and discoloration. The court admitted into evidence the photographs Officer Morasco took of Rios' injuries and her car. The photographs show "blood" and an "abrasion on . . . the bottom of her hand" and "blood" and "discoloration on the skin" on her ankle. The photographs of the car show "a footprint on the door and dents."

Detective Lancaster testified that on June 20, 2017, he talked to Rios by phone two times and she provided a recorded statement. Detective Lancaster said that after July 13, her "responsiveness to my reaching out to her was limited and of late, I have

been unsuccessful in contacting her." Detective Lancaster testified about his attempts

to contact Rios the day before and that morning:

> In fact, yesterday, I went to her home. I noted that the — there was a Christmas ornament light on in the window and the front porch light was on. There was no answer from the apartment. I left a business card asking that she call me. I attempted to find her at other locations. I went back this morning and my business card was gone and I didn't see it lying on the ground in front of her door and the porch light was out. And, again, I made a phone call to her and text message to her and I still have not heard from her.

Detective Neff testified that she listened to telephone calls Parmalee "plac[ed]

from the jail." In one conversation, Parmalee's mother Tracy Flynn said, "I have a

message for you to give Roman" from "someone name[d] Jennifer." Detective Neff

testified that Parmalee and Flynn referred to Mishkov as "Roman the Russian."

Detective Neff "located Roman Mishkov" in the police database and found "three orders

in place and Jennifer Rios was the protected party in that order."

Sergeant Allen testified that the Department of Adult and Juvenile Detention

keeps records "of all the inmate phone accounts" and calls from "the jail at all our

facilities." Sergeant Allen identified the telephone "calls from July 12 to July 13, 2017,

from an inmate . . . by the name of Jason Parmalee." The court admitted into evidence

the recorded jail telephone calls from July 12 and July 13, 2017.

The prosecutor played four of the jail telephone calls for the jury. In the first call,

Flynn tells Parmalee that she has "a message for [Roman]." Parmalee asks, "[D]o you

wanna just talk to him? He's right here." Parmalee hands the telephone over to

Mishkov and Mishkov talks to Flynn:

| | |
|---|---|
| [MISHKOV]: | Hello. |
| [FLYNN]: | Hey, Roman. |
| [MISHKOV]: | Yeah. |

| | |
|---|---|
| [FLYNN]: | Hi, uh my name's Tracy and I have been uh talking to someone name Jennifer. |
| [MISHKOV]: | Okay. |
| [FLYNN]: | Um, that you—uh I guess you had asked me send her a text . . . |
| [MISHKOV]: | Right-right-right. |
| [FLYNN]: | (unintelligible). |
| [MISHKOV]: | R-right. |
| [FLYNN]: | Yeah. Uh, okay. So she sent me this message last week. Um, and I-I tried to tell uh (unintelligible)—Jason's dad about it, and it's—um he told me you were moved. So anyway, uh it says this is extremely important, um and it says um after this message then she will write to you. Um, and it says please say that uh-uh basically, she said she is strongly considering not showing up for your case because the city has pressed charges and it's gotten way more serious then [sic] she ever intended. And she said your behavior was out of control, but not to the point of getting these punishments. |
| [MISHKOV]: | Yeah. |
| [FLYNN]: | So um anyway, um she is planning to write to you. And there was another message that um apparently uh-uh I-I misunderstood, I thought that you had gotten. But this was from a while back, and she said that she was gonna try to write to you using Cyn, C-Y-N's . . . |
| [MISHKOV]: | Okay. |
| [FLYNN]: | address.[2] |

Mishkov asks Flynn to send Rios "one more message for me." Mishkov says, "Just tell her that I love her and I'm thinking of her."

In the second call, Parmalee asks Flynn to send "another message" for Mishkov: "He wants it to say, baby, I'm waiting on your letter. . . . Do not talk to any detectives or DV[3] advocates." In the third call, Parmalee tells Flynn: "[T]hat guy that asked to send the message he wanted[,] . . . he wanted her to send the letter directly to him. . . . Instead of sending it to me." Flynn says, "I'll let her know." In the fourth call, Flynn tells

---

[2] Ellipses in original.

[3] Domestic violence.

6

Parmalee, "Jennifer responded already. . . . [T]ell him that she can't use Cyn's address because they had a falling out. She said she does not trust her. . . . She said uh she'll probably have to establish a PO Box or something like that."

After the State's case-in-chief, defense counsel moved to dismiss. Defense counsel argued insufficient evidence supported the charges and the existence of a family or household relationship. The prosecutor conceded there was insufficient evidence to prove felony violation of a court order "on or about May 23, 2017," count 2; malicious mischief in the third degree, count 3; and misdemeanor violation of a court order, count 5. The prosecutor argued the evidence supported finding Mishkov guilty of residential burglary, count 1; tampering with a witness, count 4; misdemeanor violation of a court order "on or about May 23, 2017," count 6; and misdemeanor violation of a court order "between May 23, 2017 and July 31, 2017," count 7. The prosecutor also argued evidence supported the jury considering whether a "family or household relationship existed." The court granted the defense motion to dismiss counts 2, 3, and 5. The court denied the motion to dismiss the other charges and ruled there was sufficient "evidence to go forward with the Domestic Violence finding." The defense did not call any witnesses.

Defense counsel proposed the court give a limiting instruction "to address the language of the specific findings" in the no-contact orders. Defense counsel asked the court to instruct the jury that the judicial findings in the no-contact orders that state the "parties qualified as intimate partners for the purposes of the DV designation" are not "binding upon this jury for the purposes of this special jury verdict."

The prosecutor objected to the proposed limiting instruction as an incorrect statement of the law. The prosecutor argued, "The State certainly is entitled to admit evidence at trial of prior No Contact Orders for more than the singular purpose of proving that a No Contact Order applied to one person protecting another person."

The court rejected the request to give the limiting instruction. The court ruled, "Court records qualify as public records."

In closing argument, defense counsel asserted the State did not prove beyond a reasonable doubt that Mishkov entered or remained "unlawfully in a dwelling with intent to commit a crime against a person or property therein." Defense counsel argued the evidence did not show whether Rios allowed Mishkov "to go into that apartment" or allowed Mishkov to enter to "gather his belongings from that apartment." Defense counsel argued the jail calls established Rios "was thinking about not coming [to trial]. What her reasons, what her purpose, what her motivation may have been, we do not know."

The jury found Mishkov guilty of residential burglary, count 1; tampering with a witness, count 4; misdemeanor violation of a court order on May 23, 2017, count 6; and misdemeanor violation of a court order between May 23, 2017 and July 31, 2017, count 7. By special verdict, the jury found that Mishkov and Rios were "members of the same family or household prior to or at the time the crime was committed." Mishkov appeals.

ANALYSIS

Sufficiency of the Evidence of Witness Tampering

Mishkov seeks reversal of the witness tampering conviction. Mishkov contends sufficient evidence does not support each of the alternative means of committing the

crime of witness tampering.

The State has the burden to prove every element of the crime charged beyond a reasonable doubt. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3; In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Winship, 397 U.S. at 364; State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Sufficiency of the evidence is a question of constitutional law that we review de novo. Rich, 184 Wn.2d at 903.

Evidence is sufficient if after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Owens, 180 Wn.2d 90, 99, 323 P.3d 1030 (2014). A challenge to the sufficiency of the evidence admits the truth of the State's evidence. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In determining sufficiency, circumstantial evidence is no less reliable than direct evidence. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on "issues of witness credibility." Witherspoon, 180 Wn.2d at 883.

"In enacting criminal statutes, the legislature may articulate a set of prohibited behaviors as (1) a list of distinct offenses or (2) a single offense with one or more alternative means." State v. Woodlyn, 188 Wn.2d 157, 163, 392 P.3d 1062 (2017).

The parties do not dispute that witness tampering is an alternative means crime. State v. Lobe, 140 Wn. App. 897, 902-03, 167 P.3d 627 (2007). The State charged Mishkov with witness tampering in violation of RCW 9A.72.120(1)(a) through (c). A person commits witness tampering if he attempts to induce a witness or a person he believes is about to be called as a witness to (1) testify falsely or withhold any testimony, (2) absent himself or herself from an official proceeding, and (3) withhold information from a law enforcement agency. RCW 9A.72.120(1)(a)-(c).

"In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged." State v. Kitchen, 110 Wn.2d 403, 410, 756 P.2d 105 (1988).[4] However, if "substantial evidence supports each alternative means," jury unanimity is not required "as to the means by which the crime was committed." Kitchen, 110 Wn.2d at 410;[5] State v. Armstrong, 188 Wn.2d 333, 339, 394 P.3d 373 (2017) (express jury unanimity is not required "so long as sufficient evidence supports each charged means").

Mishkov concedes there is sufficient evidence to support finding he attempted to induce Rios to "withhold information from a law enforcement agency." Mishkov contends sufficient evidence does not support the jury finding he attempted to induce Rios either to testify falsely or withhold testimony and to absent herself from trial. Viewing the evidence in the light most favorable to the State, sufficient evidence supports the jury finding each alternative means. The evidence shows Rios was cooperating with the police before Mishkov communicated with her through Flynn in July 2017. Officer Morasco testified that on May 23, Rios was "very forthcoming" and

---

[4] Emphasis in original.
[5] Emphasis in original.

10

"answered all my questions willingly." Detective Lancaster testified that on June 20, Rios spoke to him on the phone and gave a recorded statement.

Mishkov asked Flynn to contact Rios before the July 12 jail call. In the July 12 jail call, Flynn tells Mishkov that Rios responded she "is strongly considering not showing up for your case." In the next recorded jail call, Parmalee asked Flynn to send Rios another message on behalf of Mishkov—"He wants it to say, baby, I'm waiting on your letter. . . . Do not talk to any detectives or DV advocates."

Detective Lancaster testified that after July 13, it became increasingly difficult to get ahold of Rios. Detective Lancaster said he made "several attempts to contact her" through "email contact, text message contact, [and] voice contact." Detective Lancaster said he went to Rios' home the day before he testified at trial and "[t]here was no answer from the apartment." Detective Lancaster said that when he went back the next morning, his business card "was gone and I didn't see it lying on the ground in front of her door" where he left it.

Viewing the evidence and the inferences in the light most favorable to the State, a rational trier of fact could find that Mishkov attempted to induce Rios to withhold testimony and absent herself from trial. We conclude sufficient evidence supports the jury finding Mishkov guilty beyond a reasonable doubt for the crime of witness tampering.

Law of the Case Doctrine

Mishkov contends that under the law of the case doctrine, sufficient evidence does not support the convictions for witness tampering and residential burglary.

Under the law of the case doctrine, " 'jury instructions not objected to become the law of the case.' " State v. France, 180 Wn.2d 809, 814, 329 P.3d 864 (2014) (quoting State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998)). If a to-convict instruction erroneously includes an element of a crime not required under the law and the State does not object, the State must prove the additional element beyond a reasonable doubt. France, 180 Wn.2d at 814. A defendant may challenge "the sufficiency of evidence of the added element" for the first time on appeal. Hickman, 135 Wn.2d at 102.

RCW 9A.72.120(1)(a) defines the crime of "witness tampering" as an attempt to induce a witness to "[t]estify falsely or, without right or privilege to do so, to withhold any testimony."[6] The court used 11A Washington Practice: Washington Pattern Jury Instructions: Criminal 115.80, at 491 (4th ed. 2016) (WPIC), and WPIC 115.81, at 492, to instruct the jury on the definition of "witness tampering" and the elements of the crime of witness tampering. The language of the WPIC mirrors the language of the witness tampering statute.

Jury instruction 14 defines "witness tampering" as follows:

> A person commits the crime of tampering with a witness when he or she attempts to induce a witness, or person he or she has reason to believe is about to be called as a witness, in any official proceeding, or a person whom he or she has reason to believe may have information relevant to a criminal investigation, to testify falsely or, without right or privilege to do so, to withhold any testimony, or to absent himself or herself from any official proceedings, or to withhold from a law enforcement agency information which he or she has relevant to a criminal investigation.[7]

---

[6] Emphasis added.

[7] Emphasis added.

The to-convict jury instruction states:

> To convict the defendant of the crime of tampering with a witness as charged in Count FOUR, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1)  That between July 12, 2017, and July 13, 2017, the defendant attempted to induce a person to testify falsely or, without right or privilege to do so, withhold any testimony, or absent himself or herself from any official proceeding, or withhold from a law enforcement agency information which he or she had relevant to a criminal investigation; and
> (2)  That the other person was a [sic] or a person the defendant had reason to believe was about to be called as a witness in any official proceedings or a person whom the defendant had reason to believe might have information relevant to a criminal investigation; and
> (3)  That any of these acts occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count FOUR.
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to Count FOUR.[8]

RCW 9A.52.025(1) states that a person commits residential burglary when he enters or remains in a dwelling "[t]o commit a crime against a person or property therein."[9]  The court used WPIC 60.02.02, at 9, to instruct the jury on the elements of residential burglary.  The language of WPIC 60.02.02 mirrors the language of the residential burglary statute.

Jury instruction 7 defines "residential burglary" as follows:

> A person commits the crime of residential burglary when he or she enters or remains unlawfully in a dwelling with intent to commit a crime against a person or property therein.[10]

The to-convict jury instruction states:

> To convict the defendant of the crime of residential burglary as charged in Count ONE, each of the following elements of the crime must

---

[8] Emphasis added.
[9] Emphasis added.
[10] Emphasis added.

13

be proved beyond a reasonable doubt:

(1) <u>That on or about May 23, 2017, the defendant unlawfully entered or remained unlawfully in a dwelling</u>;

(2) That the entering or remaining was with intent to commit a crime against a person or property therein; and

(3) That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count ONE.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to Count ONE.[11]

Mishkov contends use of the disjunctive "or" in the to-convict jury instructions for witness tampering and residential burglary creates an alternative means, and sufficient evidence does not support the jury finding that he attempted to induce Rios to testify falsely or that he entered her apartment with the intent to commit a crime against property.

After Mishkov filed his brief, the Washington Supreme Court issued the decision in <u>State v. Tyler</u>, 191 Wn.2d 205, 422 P.3d 436 (2018). In <u>Tyler</u>, the court held that including " 'disjunctive terms' " in the to-convict instruction does not create alternative means. <u>Tyler</u>, 191 Wn.2d at 214 (quoting <u>State v. Makekau</u>, 194 Wn. App. 407, 420, 378 P.3d 577 (2016)). The court states the "inclusion of definitional language" in the to-convict instruction "is properly read as consistent with the governing statutes" and does not change the "nature of the single means crime." <u>Tyler</u>, 191 Wn.2d at 215.[12] Here, as in <u>Tyler</u>, inclusion of the disjunctive statutory definition language in the to-convict jury instructions did not create additional elements under the law of the case doctrine.

---

[11] Emphasis added.

[12] At oral argument, Mishkov conceded <u>Tyler</u> controls.

14

No-Contact Orders

Mishkov challenges admission of the no-contact orders to prove he and Rios were in a dating relationship. Mishkov contends the court erred by denying his motion to redact the findings of fact that state Mishkov and Rios are in an "[i]ntimate partner" relationship. Mishkov contends the judicial findings are inadmissible hearsay.[13]

The State moved to admit certified copies of the Seattle Municipal Court no-contact orders entered on August 29, 2016 and February 27, 2017 that prohibited Mishkov from contacting Rios. The prosecutor agreed to redact the checkmark in the box next to "Post Conviction" underneath the heading, "Domestic Violence No-Contact Order."

Defense counsel moved to also redact the "warnings as to consequences of violating the terms of the order" and the "finding of fact" that states Mishkov and Rios were in an "[i]ntimate partner" relationship as hearsay. Defense counsel argued the "intimate partners" judicial finding was an out-of-court statement introduced to prove that Mishkov and Rios were "members of the same family or household prior to or at the time" Mishkov committed the crimes of residential burglary, count 1; witness tampering, count 4; and misdemeanor violation of a no-contact order, count 6 and count 7. The jury instruction for the special verdict form requires the State to prove beyond a reasonable doubt that Mishkov and Rios were in a "dating relationship." Jury instruction 20 defines "dating relationship" as follows:

> For purposes of this case, "family or household members" means persons sixteen years of age or older who are presently residing together

---

[13] For the first time on appeal, Mishkov also contends admission of the judicial findings in the no-contact orders violated his Sixth Amendment right to confrontation. U.S. CONST. amend. VI. The record shows Mishkov did not object on confrontation grounds. "[A] defendant must assert his right to confrontation at trial or the right is waived." State v. Burns, 193 Wn.2d 190, 210, 438 P.3d 1183 (2019).

or who have resided together in the past and who have or have had a dating relationship or a person sixteen years of age or older with whom a person sixteen years of age or older has or has had a dating relationship.

"Dating relationship" means a social relationship of a romantic nature. In deciding whether two people had a "dating relationship," you may consider all relevant factors, including (a) the nature of any relationship between them; (b) the length of time that any relationship existed; and (c) the frequency of any interaction between them.

The State argued the warnings were "relevant" to "prove beyond a reasonable doubt the Defendant knowingly violated the no contact order. The prosecutor argued the findings in the no-contact orders are admissible as "certified public document[s]." The court denied the motion to redact the warnings and the findings of fact. The court ruled the findings "are a part of the order. I'm not aware of any Rule requiring that they not be there." The court admitted certified copies of the no-contact orders into evidence as exhibit 11 and exhibit 12.

Defense counsel requested the court give the jury a limiting instruction that states the "finding that was made previously on that order is not binding upon the jury as to any special verdicts that they may address in the future." The court denied the request to give the limiting instruction. The court ruled, "[P]ublic documents are admissible for facts that are within the document." The court concluded the no-contact orders "qualify as public records" and meet "the standards required by the Rule and RCW 5.44."

Mishkov contends the court erred in denying the motion to redact the findings of fact that state Mishkov and Rios were in an "[i]ntimate partner" relationship. Mishkov asserts the judicial findings are inadmissible hearsay. We agree.

"Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). Whether a statement is hearsay is a question of law that we review de novo. State v. Neal, 144 Wn.2d 600, 607, 30 P.3d 1255 (2001); State v.

16

Gonzalez-Gonzalez, 193 Wn. App. 683, 688-89, 370 P.3d 989 (2016). We review a trial court's determination "that a hearsay exception applies" for abuse of discretion. State v. Magers, 164 Wn.2d 174, 187, 189 P.3d 126 (2008).

Certified copies of public court records are admissible under the statutes that codify the public records exception to the hearsay rule. RCW 5.44.010, .040; State v. Monson, 113 Wn.2d 833, 844-45, 784 P.2d 485 (1989).

Former RCW 5.44.010 (1997)[14] states:

The records and proceedings of any court of the United States, or any state or territory, shall be admissible in evidence in all cases in this state when duly certified by the attestation of the clerk, prothonotary or other officer having charge of the records of such court, with the seal of such court annexed.

Former RCW 5.44.040 (1991)[15] states:

Copies of all records and documents on record or on file in the offices of the various departments of the United States and of this state or any other state or territory of the United States, when duly certified by the respective officers having by law the custody thereof, under their respective seals where such officers have official seals, shall be admitted in evidence in the courts of this state.

However, in Monson, the Washington State Supreme Court held that " 'to be admissible,' " the certified public record " 'must contain facts and not conclusions involving the exercise of judgment or discretion or the expression of opinion.' " Monson, 113 Wn.2d at 839 (quoting Steel v. Johnson, 9 Wn.2d 347, 358, 115 P.2d 145 (1941)). " 'The subject matter must relate to facts which are of a public nature, it must be retained for the benefit of the public and there must be express statutory authority to

---

[14] The legislature amended RCW 5.44.010 in 2019 to add the language "or any federally recognized Indian tribe." LAWS OF 2019, ch. 39, § 1 (effective July 28, 2019).

[15] The legislature amended RCW 5.44.040 in 2019 to add the language "or any federally recognized Indian tribe." LAWS OF 2019, ch. 39, § 2 (effective July 28, 2019).

compile the report.' " Monson, 113 Wn.2d at 839 (quoting Steel, 9 Wn.2d at 358). In In re Detention of Pouncy, 168 Wn.2d 382, 393-94, 229 P.3d 678 (2010)[16] (quoting Monson, 113 Wn.2d at 839), the court reiterated, "[T]he proffered document 'must contain facts and not conclusions involving the exercise of judgment or discretion or the expression of opinion.' "

Here, the court improperly allowed the State to use the court findings that Mishkov and Rios were in an "[i]ntimate partner" relationship to prove the truth of the matter asserted. In Pouncy, the court held that to use judicial findings to prove the truth of the matter asserted constitutes inadmissible hearsay. Pouncy, 168 Wn.2d at 393; see also In re Det. of Coe, 175 Wn.2d 482, 504-05, 286 P.3d 29 (2012) (public records exception does not apply to admission of substantive evidence " 'reflecting the exercise of skill, judgment, and discretion' ") (quoting 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 803.37, at 96 (5th ed. 2007)); State v. Benefiel, 131 Wn. App. 651, 655-56, 128 P.3d 1251 (2006) (admission of a certified copy of judgment and sentence that "is not a statement made for the purpose of establishing some fact and it does not constitute a statement the declarant would reasonably believe would be used by the prosecutor in a later trial").

Although the trial court erred in admitting the judicial finding that Mishkov and Rios were in an "[i]ntimate partner" relationship, the admission did not materially affect the outcome. An evidentiary error "is prejudicial if, 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.' " Neal, 144 Wn.2d at 611 (quoting State v. Smith, 106 Wn2d 772, 780, 725 P.2d 951 (1986)).

---

[16] Internal quotation marks omitted.

Other evidence established a dating relationship. On May 23, 2017, Officer Morasco responded to a 911 "domestic violence" call from Rios. Two "Domestic Violence No Contact Orders" prohibited Mishkov from having any contact with Rios. When the police arrested Mishkov inside Rios' apartment, he was not wearing a shirt or shoes and asked the police if he could put on a shirt. The evidence showed Mishkov "had clothes" in the apartment. The evidence showed Mishkov and Rios continued to be involved in a relationship after the police arrested him. In the jail telephone calls, Mishkov uses the romantic expression "baby" when communicating indirectly with Rios. Mishkov asks Parmalee's mother Flynn to tell Rios, "I love her and I'm thinking of her." We conclude the erroneous admission of the judicial findings did not materially affect the jury finding beyond a reasonable doubt that Mishkov and Rios were in a dating relationship at the time Mishkov committed the crimes of witness tampering, residential burglary, and misdemeanor violation of a no-contact order.

Authority To Impose Probation Conditions

Mishkov contends that because the court imposed the maximum sentence for the gross misdemeanor convictions, the court erred by imposing probation conditions.

The legislature gives courts the power to suspend a sentence. State v. Parent, 164 Wn. App. 210, 212, 267 P.3d 358 (2011). Under RCW 9.95.210(1)(a), a sentencing court may suspend a portion of a misdemeanor sentence and impose probation conditions. But where, as here, the court imposes the maximum term, the court lacks the authority to impose probation or conditions. State v. Gailus, 136 Wn. App. 191, 201, 147 P.3d 1300 (2006), overruled on other grounds by State v. Sutherby, 165 Wn.2d 870, 204 P.3d 916 (2009).

The court entered a misdemeanor judgment and sentence on the domestic violence misdemeanor violation of a court order convictions, count 6 and count 7. Although under the heading "Judgment and Sentence Non-Felony" the court checks the box "SUSPENDING Sentence," the court sentenced Mishkov to the maximum term of 364 days on each conviction to run concurrently with the felony judgment and sentence. Nevertheless, the court imposed probation conditions. Because the court sentenced Mishkov to the maximum term of 364 days and did not suspend any portion of the sentence, the court did not have the authority to impose probation conditions.

DNA Fee

Mishkov contends, and the State concedes, the court must remand to strike imposition of the $100 DNA fee because the State previously collected Mishkov's DNA due to a prior conviction. We accept the State's concession as well taken. See RCW 43.43.7541; State v. Ramirez, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

We affirm the convictions and the special verdict but remand to strike the probation conditions imposed as part of the misdemeanor judgment and sentence and to strike the DNA fee.

WE CONCUR:

20