**FILED**

**May 3, 2016**

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33027-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| FRANCISCO GONZALEZ-GONZALEZ, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Francisco Gonzalez-Gonzalez appeals his conviction

for unlawful imprisonment. He argues the trial court erred when it overruled his hearsay

objection to a police officer's testimony, and that this ruling affected the outcome of the

trial. For the first time on appeal, he also argues the trial court erred in imposing $700 in

discretionary legal financial obligations (LFOs) without making an adequate inquiry into

his ability to pay. We clarify that our review of a trial court's hearsay ruling is de novo,

except when review requires application of evidentiary factors. Although we agree with

Mr. Gonzalez-Gonzalez's argument that the challenged statement was hearsay, we hold

that its admission was harmless error. Also, we exercise our discretion against reviewing

his unpreserved LFO argument. We therefore affirm.

## FACTS

On August 26, 2014, C.H.[1] rode his bike to Mr. Gonzalez-Gonzalez's apartment to buy marijuana. When C.H. arrived, Mr. Gonzalez-Gonzalez came outside of the apartment and invited C.H. inside. Mr. Gonzalez-Gonzalez then pulled C.H. into the apartment and accused C.H. of stealing his watch. Mr. Gonzalez-Gonzalez's brother stood between C.H. and the apartment door and held a knife. Mr. Gonzalez-Gonzalez told C.H. that he could not leave the apartment unless it was to retrieve the stolen watch. C.H. told Mr. Gonzalez-Gonzalez that he would go get the watch, and Mr. Gonzalez-Gonzalez let C.H. leave the apartment. C.H. then rode his bike to a nearby restaurant and called the police.

Officer Jasen McClintock responded to the call and met C.H. at the restaurant. Officer Kari Skinner and Sergeant James Thompson also responded to the call and joined Officer McClintock at the restaurant. At the restaurant, C.H. described the general location of Mr. Gonzalez-Gonzalez's apartment building to Officer McClintock. Officer McClintock then sent Officer Skinner and Sergeant Thompson over to the apartment building. Officer Skinner arrived at the apartment building first and saw two men on the apartment balcony who matched the dispatcher's description. Officer Skinner did not

---

[1] For purposes of this opinion, the minor's initials are used in place of his name.

approach the apartment, but instead waited for backup. After backup arrived, Mr. Gonzalez-Gonzalez walked over to her and identified himself as "Kiko." Report of Proceedings (RP) (Nov. 19, 2014) at 89.

Officer McClintock then took C.H. to the general area of the apartment building. C.H. pointed out Mr. Gonzalez-Gonzalez's specific apartment. Officer McClintock conducted a show-up, and C.H. identified Mr. Gonzalez-Gonzalez and his brother as the individuals who restrained him. Officer Skinner then arrested Mr. Gonzalez-Gonzalez.

The State charged Mr. Gonzalez-Gonzalez with first degree robbery, unlawful imprisonment, and harassment. At trial, C.H. testified he had known Mr. Gonzalez-Gonzalez for three to four years and knew him by the nickname "Kiko." RP (Nov. 19, 2014) at 54. During the State's direct examination of Officer Skinner, the following exchange occurred:

> [Prosecutor:] Were you able to locate the residence where this incident occurred?
> [Officer Skinner:] Yes, ma'am, I was.
> [Prosecutor:] How so?
> [Officer Skinner:] Originally, the reporting party had indicated a general area to Officer McClintock, and then dispatch had done a records management search on an alias name that had been provided by the name of Kiko.

RP (Nov. 19, 2014) at 86. Mr. Gonzalez-Gonzalez objected to Officer Skinner's testimony as hearsay and argued that Officer Skinner described an out-of-court statement

3

that the State offered for the purpose of identifying Mr. Gonzalez-Gonzalez. The trial

court overruled Mr. Gonzalez-Gonzalez's objection.

The jury convicted Mr. Gonzalez-Gonzalez of unlawful imprisonment but

acquitted him of robbery and harassment. The trial court sentenced Mr. Gonzalez-

Gonzalez to two months' incarceration and gave him credit for time served in pretrial

custody, which exceeded his two-month sentence. The trial court imposed a total of

$1,800 in LFOs, comprised of a $500 fine, mandatory costs of $600, and discretionary

costs of $700 for a court-appointed attorney. Before it imposed the LFOs, the trial court

conducted the following inquiry:

> THE COURT: Okay. Now, were you employed at the time of the
> events—at the time of your arrest?
> [MR. GONZALEZ-GONZALEZ]: Yeah. I was working helping a
> mechanic in Kennewick.
> THE COURT: Okay.

RP (Dec. 19, 2014) at 6. The judgment and sentence contained the following boilerplate

language: "The defendant has the ability or likely future ability to pay the legal financial

obligations imposed herein." Clerk's Papers (CP) at 20. Mr. Gonzalez-Gonzalez did not

object to the LFOs. This appeal followed. The trial court stayed Mr. Gonzalez-

Gonzalez's kidnapping offender registration requirement pending the outcome of this

appeal.

4

No. 33027-3-III
*State v. Gonzalez-Gonzalez*

## ANALYSIS

A.    Alleged hearsay error

Mr. Gonzalez-Gonzalez argues that Officer Skinner's testimony concerning how she found his apartment was hearsay. Officer Skinner testified that dispatch located the defendant's address by doing a records management search using his alias, Kiko. Mr. Gonzalez-Gonzalez argues that this "suggested to the jury that [he] was known to the police, used an alias . . . perhaps had a criminal record, [and the admission of this hearsay] was not harmless." Appellant's Br. at 7.

1.    *Standard of review*

We take this opportunity to clarify the proper standard of review of trial court hearsay rulings. This court reviews whether a statement was hearsay de novo. *State v. Hudlow*, 182 Wn. App. 266, 281, 331 P.3d 90 (2014) (citing *State v. Neal*, 144 Wn.2d 600, 607, 30 P.3d 1255 (2001)); *State v. Edwards*, 131 Wn. App. 611, 614, 128 P.3d 631 (2006); *but see State v. Woods*, 143 Wn.2d 561, 595, 23 P.3d 1046 (2001) (applying an abuse of discretion standard of review to the excited utterance hearsay exception, which requires application of evidentiary factors by the trial court). The reason we do not review for an abuse of discretion is because ER 802 explicitly states that hearsay evidence is *not* admissible except as provided by the hearsay exception rules. The rules do not give

5

trial courts discretion to admit inadmissible evidence. The more deferential abuse of discretion standard generally applies to our review of those trial court rulings where trial courts must use their discretion when weighing various factors.

As with either standard of review, an erroneous evidentiary ruling does not result in reversal unless the defendant was prejudiced. *State v. Thomas*, 150 Wn.2d 821, 871, 83 P.3d 970 (2004). For evidentiary errors not implicating a constitutional mandate, we reverse only if, "'within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'" *Id.* (quoting *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981)). "'The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole.'" *Id.* (quoting *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)).

2. *Whether Officer Skinner's testimony was hearsay*

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). A "statement" is an oral or written assertion, or a person's nonverbal conduct if that person intends that conduct to be an assertion. ER 801(a). "Whether a statement is hearsay depends upon the purpose for which the statement is offered." *State v. Crowder*, 103 Wn. App. 20, 26, 11 P.3d 828 (2000). "A statement is

not hearsay if it is used only to show the effect on the listener, without regard to the truth of the statement." *Edwards*, 131 Wn. App. at 614. However, where an out-of-court statement is offered for the truth of what someone told the witness, the statement is hearsay even though the witness only implies the out-of-court statement. *Hudlow*, 182 Wn. App. at 276-77. In determining whether the statement was offered to prove its truth instead of for a benign purpose as the State asserts, we examine whether the benign purpose was relevant. *Id.* at 278-80.

The prosecutor asked Officer Skinner how she was able to find Mr. Gonzalez-Gonzalez's apartment, and Officer Skinner testified that "dispatch had done a records management search on an alias name that had been provided by the name of Kiko." RP (Nov. 19, 2014) at 86. The trial court overruled Mr. Gonzalez-Gonzalez's objection on the grounds that Officer Skinner did not repeat what someone else had said.

The trial court's view of hearsay was too narrow. As mentioned above, hearsay includes an implied statement, provided that the statement was offered for its truth. Here, the implied statement, according to Mr. Gonzalez-Gonzalez, is that law enforcement knew him based on his alias name, Kiko. The State responds that it elicited this testimony for the benign purpose of establishing why Officer Skinner approached the particular apartment.

7

We hold that the State has failed to establish the relevancy of the statement's purported benign purpose and, therefore, the State elicited the statement for a hearsay purpose. There is no relevance to why Officer Skinner approached the particular apartment. The officer testified that she did not approach the apartment but instead waited for backup, and Mr. Gonzalez-Gonzalez approached her and identified himself as Kiko after backup arrived.

Nevertheless, the erroneous admission of hearsay is harmless error unless, within reasonable probabilities, the improper evidence affected the outcome of the trial. *Thomas*, 150 Wn.2d at 871. Mr. Gonzalez-Gonzalez argues that the jury could have found him guilty based on the fact that he was known to law enforcement by the name Kiko. His argument requires too much speculation.

First, the jury acquitted Mr. Gonzalez-Gonzalez of the more serious offense of first degree robbery, and also of harassment. This shows that the jury based its verdict on evidence, not improper bias. Second, there is no evidence that only persons with criminal histories are known by law enforcement. Third, the State did not argue or imply that Mr. Gonzalez-Gonzalez was guilty because he was known by law enforcement or had a criminal history. We fail to see the connection between a nonpejorative alias such as "Kiko" and the jury's verdict in this case. We hold the admission of Officer Skinner's

hearsay statement implying that law enforcement knew Mr. Gonzalez-Gonzalez as Kiko was harmless error.

B.    Unpreserved alleged LFO error

Whenever a person is convicted, the trial court "may order the payment of a legal financial obligation" as part of the sentence. RCW 9.94A.760(1); *accord* RCW 10.01.160(1). Because both statutes use the word "may" when authorizing imposition of costs described therein, we refer to such costs as "discretionary costs." By statute, the trial court is not authorized to order a defendant to pay discretionary costs unless he or she is or will be able to pay them. RCW 10.01.160(3). In determining the amount and method of payment of discretionary costs, the trial court shall take account of the financial resources of the defendant and the nature of the burden that payment of such costs will impose. RCW 10.01.160(3). Accordingly, "a trial court has a statutory obligation to make an individualized inquiry into a defendant's current and future ability to pay before the court imposes LFOs." *State v. Blazina*, 182 Wn.2d 827, 830, 344 P.3d 680 (2015).

Importantly, "the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry." *Id.* at 838. Therefore, "[t]he record must reflect that the trial court made an individualized

9

inquiry into the defendant's current and future ability to pay."[2] *Id.* However, "[n]either RCW 10.01.160 'nor the constitution requires a trial court to enter formal, specific findings regarding a defendant's ability to pay [discretionary] court costs.'" *State v. Lundy*, 176 Wn. App. 96, 105, 308 P.3d 755 (2013) (quoting *State v. Curry*, 118 Wn.2d 911, 916, 829 P.2d 166 (1992)).

"The trial court's determination 'as to the defendant's resources and ability to pay is essentially factual and should be reviewed under the clearly erroneous standard.'" *State v. Bertrand*, 165 Wn. App. 393, 404 n.13, 267 P.3d 511 (2011) (quoting *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116, 837 P.2d 646 (1991)). A finding of fact is clearly erroneous when, "'although there is some evidence to support it, review of all of the evidence leads to a definite and firm conviction that a mistake has been committed.'" *Lundy*, 176 Wn. App. at 105 (internal quotation marks omitted) (quoting *Schryvers v. Coulee Cmty. Hosp.*, 138 Wn. App. 648, 654, 158 P.3d 113 (2007)).

"A defendant who makes no objection to the imposition of discretionary LFOs at sentencing is not automatically entitled to review." *Blazina*, 182 Wn.2d at 832. Subject

---

[2] Although courts have little guidance regarding what counts as an "individualized inquiry," *Blazina* makes clear, at a minimum, the sentencing court "must also consider important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay," and "should also look to the comment in court rule GR 34 for guidance." *Blazina*, 182 Wn.2d at 838.

to three exceptions that do not apply here, RAP 2.5(a) provides that an "appellate court may refuse to review any claim of error which was not raised in the trial court." *Blazina* confirmed that an appellate court's discretion under RAP 2.5(a) extends to review of a trial court's imposition of discretionary LFOs. *Id.* at 834-35.

Under *Blazina*, each appellate court is entitled to "make its own decision to accept discretionary review" of unpreserved LFO errors. *Id.* at 835. Admittedly, the judges of this court are not in agreement as to what extent discretion should be exercised to review unpreserved LFOs. An approach favored by this author is to consider the administrative burden and expense of bringing a defendant to court for a new hearing, versus the likelihood that the discretionary LFO result will change. "An important consideration of this analysis is the dollar amount of discretionary LFOs imposed by the sentencing court." *State v. Arredondo*, 190 Wn. App. 512, 538, 360 P.3d 920 (2015). In this case, the majority of these factors weigh against reviewing Mr. Gonzalez-Gonzalez's unpreserved LFO challenge.

First, the dollar amount of the discretionary LFOs the trial court imposed does not support granting review. The trial court imposed both mandatory and discretionary LFOs. The mandatory LFOs included the $500 victim assessment and the $100 deoxyribonucleic acid (DNA) collection fee. *See* RCW 7.68.035(1)(a);

RCW 43.43.7541. These mandatory LFOs are required irrespective of Mr. Gonzalez-Gonzalez's ability to pay. *Lundy*, 176 Wn. App. at 103. Accordingly, the only discretionary cost that required the trial court to inquire into Mr. Gonzalez-Gonzalez's ability to pay was the $700 court-appointed attorney fee.[3]

The second factor—the administrative burden and expense of bringing Mr. Gonzalez-Gonzalez to court for a new sentencing hearing—does not weigh in favor of either side in this case. Remand is not required for the trial court to address any other sentencing errors, so the trial court would have to hold a resentencing hearing for the sole purpose of conducting a *Blazina* inquiry. However, Mr. Gonzalez-Gonzalez is not incarcerated, so the State also would not incur the expense of transporting him to court.

However, the final factor weighs against granting review—a new sentencing hearing would not likely change the LFO result. Although the trial court found that Mr. Gonzalez-Gonzalez was indigent and thus qualified for publicly funded counsel both for trial and on appeal, Mr. Gonzalez-Gonzalez testified that he was employed helping a mechanic at the time of his arrest. In addition, Mr. Gonzalez-Gonzalez was released from

---

[3] The trial court also imposed a $500 fine under RCW 9A.20.021. This division recently decided that a trial court may impose fines under RCW 9A.20.021 without inquiring into a defendant's ability to pay. *See State v. Clark*, 191 Wn. App. 369, 376, 362 P.3d 309 (2015); *accord State v. Calvin*, 176 Wn. App. 1, 24-25, 316 P.3d 496 (2013), *remanded*, 183 Wn.2d 1013, 353 P.3d 640 (2015).

12

No. 33027-3-III
*State v. Gonzalez-Gonzalez*

confinement on the day of his sentencing hearing. Accordingly, Mr. Gonzalez-Gonzalez is not subject to the negative effects that an extended period of incarceration would have on his employment prospects, and there is no reason to suspect that he had difficulty resuming gainful employment.

Considering the small amount of discretionary LFOs imposed in this case and the unlikelihood that a new sentencing hearing would change the LFO result, we exercise our discretion and decline to review this alleged error.

Because Mr. Gonzalez-Gonzalez is indigent and his appeal has merit, we exercise our discretion under RCW 10.73.160(1) and RAP 14.1(a) to not award costs.

Affirmed.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Cooney, J.P.T.

13