**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37848-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| ANDRES R. ROCHA, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Andres Rocha set a car on fire on his father's property in close proximity to a neighbor's house. He appeals after a jury convicted him of second degree arson and first degree arson. He raises several arguments. One is dispositive.

The arson charges required the State to prove that Rocha acted "maliciously," which means with an evil intent to vex or annoy another person. The strongest evidence that Rocha acted to vex or annoy another person was the testimony of two officers that dispatch told them a caller had reported an argument between a father and a son near a gas station. The State convinced the trial court that the testimony was relevant to explain why the officers went to the gas station.

Rocha argues the trial court committed prejudicial error when it denied his motion

No. 37848-9-III
*State v. Rocha*

in limine to preclude this testimony from the two officers.  We agree.  We take this opportunity to stress that trial judges should not admit hearsay evidence for a nonhearsay purpose when that purpose is irrelevant.  We reverse without prejudice.

FACTS

*Initial call*

Dispatch informed two Moses Lake police officers that a caller, Jose Rocha, had reported being in an argument with his adult son, Andres Rocha.  The caller reported that Rocha then went to a nearby gas station, filled two paper cups with gas, and he did not know what the son would do with the gas.

Officers Jose Perez and Caitlin Carter responded to the gas station in separate police cars.  They could not locate either father or son.  Officer Perez drove toward 3031 West Peninsula Drive, the father's house, where he thought he might find Rocha.  On his way there, he saw Rocha walking on the road carrying a grocery bag.  The bag contained a few items, including two large drink cups full of gasoline.

Officer Perez called Rocha's name using his car's mouth speaker.  Rocha responded by lying face down on the ground.  When Officer Perez approached Rocha and asked him what he was doing, Rocha replied that he was not resisting and the officer had

2

No. 37848-9-III
*State v. Rocha*

no right to detain him.  Officer Perez did not say anything about why he was looking for Rocha.

Officer Caitlin Carter arrived around this time.  By then, Rocha was sitting on the ground, holding a leaking bag that smelled like gasoline.  Rocha asked if he was free to leave, and the officers said he was.  Rocha walked toward his father's house.

*Second call*

Erin Smith and her boyfriend Derick Brickman live next to Jose Rocha's house. They were in their backyard when they heard yelling and glass breaking.  They saw a man, later identified as Rocha, throwing things at a car and making growling noises. They went inside and continued to watch.  They saw Rocha dump something into the car, light a piece of paper on fire, and throw it into the car.  The car exploded and Ms. Smith called 911 to report the car fire.

Dispatch alerted Officers Perez and Carter of the reported fire.  This call came about 10 or 15 minutes after their encounter with Rocha.  When they arrived at Jose Rocha's property, they saw a black passenger car on fire.  Officer Perez placed Rocha under arrest, and Officer Carter drove Rocha to jail.

When Moses Lake Police Department Sergeant Jeff Sursely arrived, the car was completely engulfed in flames.  He could see the smoke from over two miles away.  The

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37848-9-III
*State v. Rocha*

fire spread to two more cars and a nearby boat. The fire department was able to extinguish the fire without more damage.

 *Trial court proceedings related to hearsay statement*

 The State charged Rocha by amended information with one count of arson in the second degree and one count of arson in the first degree.

 Motions in limine were argued prior to opening statements. In one motion, Rocha sought to exclude all statements the officers had received from dispatch. Specifically, he argued that the officers should not testify that they were responding to a "domestic dispute." Report of Proceedings (RP) at 185. The State argued the evidence was admissible for a nonhearsay purpose, to explain why the officers went to the gas station. It assured the trial court the statement was not relevant to any allegation.

 The trial court denied Rocha's motion in limine. Quoting a leading authority on evidence, it explained:

> "[A] statement is hearsay if . . . the *factual content* of the statement (e.g., 'the light was red') . . . is relevant in the case at hand.
>  Conversely, . . . if the statement is relevant not for its content, but simply because the statement was made, the statement is usually not objectionable as hearsay."

RP at 187 (quoting 5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE § 801:3, at 404 (2020)).

4

No. 37848-9-III
*State v. Rocha*

Rocha responded that the statement about a domestic dispute between father and son *is* relevant for its content because it supported a finding that he acted maliciously, which is an element of the charged offenses. The trial court nevertheless maintained its ruling.

At trial, the State asked Officer Perez about the call he received from dispatch. The officer answered, "The call for service was a verbal disturbance between father and son at a gas station." RP at 221. The State later elicited from Officer Carter that she responded to the gas station because of a "domestic situation." RP at 330.

Rocha chose to testify. In summary, he testified he was working on his car before he unintentionally started the fire. On cross-examination, the State asked about what happened before the fire:

> [STATE:] Okay. You were at the gas station with your father, correct?
> [ROCHA:] No, I was not at the gas station with my father.
> [STATE:] Okay. Did you have a dispute with your father?
> [ROCHA:] Not really to my recollection, no.
> [STATE:] Just not one that you remember?
> [ROCHA:] No . . . I don't believe that we had any kind of dispute.

RP at 381.

In closing, the State walked the jury through the elements it needed to prove. With respect to malice, it highlighted three points. First, without evidentiary support, it argued Rocha more or less admitted to getting into an argument with his father. Second, it

5

No. 37848-9-III
*State v. Rocha*

argued that both officers testified Rocha acted "agitated" when stopped shortly before the fire and that both neighbors testified Rocha was "looking angry, smashing up a vehicle." RP at 442-43. Third, it argued that Rocha acted with malice because he intentionally set the car on fire.

The jury found Rocha guilty of second degree arson and first degree arson. After sentencing, he timely appealed.

ANALYSIS

Rocha raises numerous claims of error in his direct appeal and in a statement of additional grounds for review. We review only the dispositive claim: The trial court erred in admitting prejudicial hearsay evidence.

*Erroneous admission of hearsay*

We review whether or not a statement is hearsay de novo, as it is a matter of law. *State v. Neal*, 144 Wn.2d 600, 607, 30 P.3d 1255 (2001). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). Where an out-of-court statement is offered for the truth of what someone told a witness, the statement is hearsay. *State v. Gonzalez-Gonzalez*, 193 Wn. App. 683, 690, 370 P.3d 989 (2016). Where a party argues the statement was offered for another purpose, we examine whether that purpose was relevant. *Id.*

6

No. 37848-9-III
*State v. Rocha*

We have consistently held that a hearsay statement not offered to prove the truth of the matter asserted is inadmissible under ER 801(c) if the purpose for which it is offered is irrelevant. *See, e.g.*, *Gonzalez-Gonzalez*, 193 Wn. App. at 690; *State v. Hudlow*, 182 Wn. App. 266, 278-80, 331 P.3d 90 (2014); *State v. Edwards*, 131 Wn. App. 611, 614-15, 128 P.3d 631 (2006); *State v. Johnson*, 61 Wn. App. 539, 545, 811 P.2d 687 (1991); *State v. Aaron*, 57 Wn. App. 277, 280, 787 P.2d 949 (1990). Evidence is relevant if it tends to make any fact of consequence in the litigation more probable or less probable. ER 401.

The State argued to the trial court that the hearsay statement from dispatch was relevant to explain why the officers went to the gas station. But *why* the officers went to the gas station was of no consequence at trial. The only relevance of there being an argument between a father and son was for a hearsay purpose—to prove Rocha had a motive to later intentionally set the car on fire on his father's property. Because the statement was not relevant for the nonhearsay purpose, the trial court erred in admitting it.

State v. Iverson

The State relies on *State v. Iverson*, 126 Wn. App. 329, 108 P.3d 799 (2005). We find this case unpersuasive. There, officers responded to a reported trespass at an apartment. *Id.* at 332. Before arriving, dispatch advised the officers that a protective order had been issued protecting the caller, Cara Nichols, from Iverson. *Id.* The officers

7

No. 37848-9-III
*State v. Rocha*

arrived at the apartment, and the woman who answered the door identified herself as

Nichols. *Id.* The officers found Iverson in the apartment and arrested him. *Id.* at 333.

The State charged Iverson with felony violation of a no-contact order, and the

matter proceeded to a bench trial. *Id.* Nichols did not appear for trial. *Id.* The State

admitted jail booking photographs of Nichols through the testifying officers. *Id.* at 333-

35. Both officers testified that the woman who answered the door was the person in

Nichol's booking photographs. *Id.* at 335.

We noted that if the trial court had considered Nichols's self-identification as

substantive evidence, the statement would have been hearsay. *Id.* at 336. But it did not.

Instead, the State successfully argued that the jail booking records were admissible under

the business records hearsay exception. *Id.* at 337-42. The trial court relied on the

properly admitted photographs and the officers' testimonies about them to find that the

woman who answered the door was Nichols and that Iverson had violated the no-contact

order. *Id.* at 335.

There, we also determined that Nichols's self-identification was relevant for a

nonhearsay purpose—to explain why the officers continued investigating. *Id.* at 337. We

now question that determination. The officers' decision to continue investigating was not

a fact of consequence at trial. It was irrelevant. The better reason for affirming Iverson's

8

No. 37848-9-III
*State v. Rocha*

conviction would have been to acknowledge that the matter was a bench trial and the trial court's conviction was not based on Nichols's self-identification. Thus, the admission of her hearsay statement was harmless error.

*Objectively consider why the hearsay evidence is being offered*

Trial courts too often admit hearsay evidence for a nonhearsay purpose even when that purpose is irrelevant. We urge trial courts to objectively consider why the hearsay evidence is truly being offered. Hearsay statements truly being offered for nonhearsay purposes retain their purpose even if untrue. If the proponent of the hearsay statement was to acknowledge the statement to be false and if this acknowledgment would favor the statement's opponent, then the hearsay statement is probably being offered for its truth and it should be excluded. *See* ROBERT H. ARONSON & MAUREEN A. HOWARD, THE LAW OF EVIDENCE IN WASHINGTON, § 10.05[1] (5th ed. 2021) (suggesting a similar approach for determining the admission of hearsay evidence for a nonhearsay purpose).

*Harmful error*

The erroneous admission of evidence in violation of an evidentiary rule is analyzed under the nonconstitutional harmless error standard. *State v. Gower*, 179 Wn.2d 851, 854, 321 P.3d 1178 (2014). Nonconstitutional error is harmless if "there is a reasonable probability that, without the error, 'the outcome of the trial would have been materially

No. 37848-9-III
*State v. Rocha*

affected.'" *Id.* at 854 (internal quotation marks omitted) (quoting *State v. Gresham*, 173 Wn.2d 405, 433, 269 P.3d 207 (2012)).

To determine if the erroneously admitted evidence was material, it is helpful to understand how the jury would have used that evidence and the properly admitted evidence to arrive at its verdict. We turn now to the trial court's instructions of law to the jury.

In the elements instruction for both arson charges, the trial court instructed the jury the State was required to prove beyond a reasonable doubt that Rocha "acted knowingly and maliciously." Clerk's Papers (CP) at 43, 45. It instructed the jury that "malice and maliciously" mean "an evil intent, wish, or design to vex, annoy, or injure *another person*. Malice may be, but is not required to be, inferred from an act done in willful disregard of the rights *of another*." CP at 39 (emphasis added).

The only direct evidence that Rocha had an evil intent to vex or annoy another person was the inadmissible evidence that he had an argument with his father. The evidence of an argument tends to explain why Rocha lit the car on fire on his father's property.

The State argues the jury could infer malice because Rocha intentionally set the car on fire. We disagree. Rocha testified that the car was his, even though it was not

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37848-9-III
*State v. Rocha*

registered in his name. Rocha lighting his own car on fire was not an act done in willful disregard of the rights *of another*. But even if we conclude otherwise, the jury was permitted, but not required, to infer malice from that act. That strained inference is insufficient to overcome the improperly admitted direct evidence that Rocha and his father argued shortly before the fire. We conclude there is a reasonable probability that, without the error, the outcome of the trial would have been materially affected.

We reverse both convictions without prejudice.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, J.

Staab, J.

11