# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  58247-3-II |
| Respondent, | |
| v. | |
| PATRICK M. LATHROP, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Patrick M. Lathrop appeals his conviction for first degree assault with a firearm sentencing enhancement.  Lathrop argues that the trial court erred by determining Lathrop's statements made in a police interview were inadmissible hearsay.  Lathrop also raises five additional claims in a statement of additional grounds (SAG).[1]  We affirm.

## FACTS

Late in the evening of April 30, 2022, Stanley Delano went to dinner in Gig Harbor with his family.  After dinner, Delano and his girlfriend, Sharon Geary, went across the parking lot to a supermarket.  Delano and Geary purchased soda, ice cream, and ice.  After checking out, they went to the ice machine at the store exit to pick up the ice they had purchased.

A man, later identified as Lathrop, approached Delano and Geary and blocked them with his shopping cart.  Lathrop then demanded to see Delano's receipt.  Delano refused and tried to walk around Lathrop's cart to exit the store.  Lathrop moved his cart to block Delano from exiting.

---

[1]  RAP 10.10.

Delano felt threatened and threw some punches at Lathrop, which caused Lathrop and Delano to both stumble out the store door. Delano turned around to return to Geary, who was still in the store. Lathrop then drew a gun and shot Delano in the neck.

When the police arrived at the scene, Lathrop identified himself as the shooter and surrendered. After his arrest, Lathrop was interviewed by Detective Tray Federici.

The State charged Lathrop with first degree assault with a firearm sentencing enhancement. Later, the State amended the information to add a count of unlawful imprisonment with a firearm sentencing enhancement.

Before trial, the State filed a motion in limine seeking to exclude statements Lathrop made in his interview with Detective Federici about his fears when Delano kept punching him. The trial court heard arguments on the State's motion but reserved ruling on the admissibility of Lathrop's statements to Detective Federici.

At trial, Delano and Geary testified consistent with the facts outlined above. The State also introduced surveillance video depicting the shooting.

Detective Federici testified that during the interview with Lathrop, Lathrop made statements about what he was afraid of happening during the incident. When defense counsel began to inquire about the substance of Lathrop's statements, the State objected to the statements as inadmissible hearsay. Defense counsel argued that the statements were relevant for establishing his self-defense claim because they established that he feared bodily injury at the time of the shooting. Defense counsel also argued that because the statements were intended to prove Lathrop's state of mind and not whether he was about to suffer injury, the statements were not being introduced to prove the truth of the matter asserted and were not hearsay. Defense counsel

further argued that the statements fell within the hearsay exception for the declarant's then existing state of mind because he was describing how he felt at the time the incident was occurring.

The State argued that Lathrop's statements were being offered to prove the truth of the matter asserted. The State also argued that the statements were not admissible as an existing state of mind hearsay exception because the interview occurred after the incident, and thus, the statements described Lathrop's previous state of mind and not his existing state of mind at the time of the incident.

The trial court disagreed with defense counsel's characterization of the statements as non-hearsay. The trial court also found that the statements did not fall within the hearsay exception of existing state of mind because the interview with Detective Federici occurred after the incident.

Lathrop testified at trial and stated that he had a concealed pistol license and often carried a firearm with him at night because of concerns about the high crime rate. Lathrop also testified he had several health conditions that caused him physical limitations.

On the night of the incident, Lathrop left his house late in the evening to go buy some food and beer at the store. Lathrop was familiar with the store because he went there almost every night.

Lathrop further testified that as he was checking out with his purchases, he learned a shoplifter was leaving the store. Lathrop paid for his groceries and headed to the exit of the store. Lathrop was intending to get the license plate of the shoplifter as he came up to Delano and Geary. Lathrop stated that he asked Delano and Geary if they had seen anyone running out of the store. Then Lathrop told them the cashier might think that they were shoplifting and suggested that they go show the cashier their receipt.

As Lathrop turned to walk away from Delano and Geary, he got hit on the head. Lathrop realized he was being beaten, and as he tried to run, his cart fell over. Lathrop testified that Delano

hit him multiple times as he tried to run away. Lathrop thought that Delano was trying to kill him. Lathrop began falling and pulled out his firearm. Lathrop fired at Delano as Delano was moving towards him. Lathrop knew he could not take any more hits and "had to fire" because Delano was still coming at him. 3 Verbatim Rep. of Proc. at 475. Lathrop believed he was going to suffer more physical harm or be killed.

The trial court instructed the jury on the lawful use of force. The jury found Lathrop guilty of first degree assault and found that Lathrop was armed with a firearm at the time of the offense. The jury found Lathrop not guilty of unlawful imprisonment.

Both parties stipulated that justice was best served by imposing an exceptional sentence below the standard sentencing range. The superior court imposed an exceptional sentence below the standard range of 12 months plus the mandatory 60-month firearm sentencing enhancement for a total of 72 months' confinement.

Lathrop appeals.

ANALYSIS

Lathrop challenges the trial court's exclusion of statements he made to Detective Federici. Lathrop also raises five additional claims in his SAG.

A.      ADMISSIBILITY OF LATHROP'S INTERVIEW STATEMENTS

Lathrop argues that the trial court erred in excluding statements from his interview with Detective Federici because they were being offered for a nonhearsay purpose. Alternatively, Lathrop argues that the statements were admissible under the then existing mental, emotional, or physical condition exception to the hearsay rule. We disagree.

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Darden*, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002). However, "[t]his court reviews whether a statement

4

was hearsay de novo." *State v. Gonzalez-Gonzalez*, 193 Wn. App. 683, 688-89, 370 P.3d 989 (2016).

1. Nonhearsay Purpose

First, Lathrop argues that his interview statements to Detective Federici were not hearsay because the statements "were not offered to prove the truth of the matter asserted but as circumstantial evidence to show his state of mind during the incident." Br. of Appellant at 10.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is inadmissible unless an exception applies. ER 802.

Here, Lathrop wanted to introduce the statements he made to Detective Federici to prove that, at the time of the incident, he feared for his life and believed he was going to be beaten to death. Lathrop was clearly attempting to introduce these statements to prove what he believed at the time of the incident, which is the truth of the matter asserted in the statement.

On appeal, Lathrop conflates relevance with a nonhearsay purpose. The statements Lathrop made to Detective Federici only spoke to Lathrop's state of mind at the time of the offense; the only relevance of the statements were to prove the truth of the matter asserted — that he feared for his life and believed he was going to be beaten to death. Thus, the statements were offered only to prove the truth about what he believed at the time of the incident. That is hearsay. Lathrop's interview statements to Detective Federici were hearsay and, therefore, only admissible if an exception to the hearsay rule applies. *See* ER 802.

2. Hearsay Exception

Lathrop also argues that his interview statements were admissible under the hearsay exception for then existing mental, emotional, or physical condition.

Under ER 803(a)(3) a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)" is not excluded under the hearsay rule.

However, here, Lathrop's interview statements to Detective Federici were not describing Lathrop's state of mind, emotion, sensation, or physical condition at the time he made the statements. Instead, Lathrop was describing his state of mind during the incident with Delano, which occurred prior to the interview with Detective Federici. Because Lathrop's statements related to his state of mind at a prior event, they do not fall within the hearsay exception for then existing mental, emotional, or physical condition. *See* ER 803(a)(3). Accordingly, the superior court did not abuse its discretion in excluding Lathrop's interview statements to Detective Federici as inadmissible hearsay.

B.      SAG CLAIMS

Lathrop raises five additional claims in his SAG. Lathrop's SAG claims are unavailing.

1.      Ineffective Assistance of Counsel

First, Lathrop attempts to assert several instances of ineffective assistance of counsel. Lathrop's claims of ineffective assistance of counsel fail.

In an ineffective assistance of counsel claim, a defendant must show that (1) defense counsel's representation was deficient (*i.e.*, counsel's representation fell below an objective standard of reasonableness based on consideration of all the circumstances) and (2) defense counsel's deficient representation prejudiced the defendant (*i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different). *State v. Stotts*, 26 Wn. App. 2d 154, 165, 527 P.3d 842 (2023).

Lathrop argues that he received ineffective assistance of counsel because his original defense counsel retired and did not communicate with his substitute counsel about the State's anticipated amendment to the information. However, the State amended the information to include a charge of unlawful imprisonment—the charge Lathrop was acquitted of. Therefore, Lathrop was not prejudiced by the lack of communication regarding the State's intended amendment to the information.

Lathrop also argues that he received ineffective assistance of counsel because no CrR 3.5 hearing was conducted. However, the trial court considered the admissibility of the Lathrop's statements under the hearsay rules when defense counsel attempted to introduce them. Therefore, any failure to hold a CrR 3.5 hearing was not prejudicial to Lathrop.

Finally, Lathrop argues that counsel was ineffective for failing to introduce evidence regarding statements he made to officers at the scene and disparaging remarks that Detective Federici made about him during his interview. However, these claims rely on evidence outside the record on appeal, and we do not consider matters based on evidence outside the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Therefore, we do not consider this claim of ineffective assistance of counsel.

2.    Consideration of Past Conduct

Lathrop claims that the trial court erred by refusing to allow evidence of Delano's prior charge of making false statements to a public servant and a restraining order between Delano and Geary. Lathrop also claims the trial court should have allowed evidence of a prior shooting Lathrop was not charged with. These claims fail.

First, during motions in limine, Lathrop moved to be allowed to inquire into Delano's 2012 charge of making a false statement to a public servant. Delano entered into a pretrial diversion

agreement that he completed, and the charge was dismissed. The State argued that the incident was an isolated incident too remote in time to be probative of Delano's character for truthfulness or untruthfulness. The trial court concluded that the charge had only marginal relevance and was not necessarily probative due to the length of time since the incident and denied Lathrop's motion.

ER 608(b) provides,

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, *in the discretion of the court, if probative of truthfulness or untruthfulness*, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

(Emphasis added.) Here, it was well-within the trial court's discretion to conclude that an isolated incident in 2012 was too remote in time to be probative of Delano's character for truthfulness or untruthfulness. Accordingly, the trial court did not err in denying Lathrop's motion to inquire into Delano's prior charge for making a false statement to a public servant.

Second, there is no evidence in the record regarding a restraining order between Delano and Geary. Again, we do not address claims based on matters outside the record. *McFarland*, 127 Wn.2d at 335.

Third, the record shows that trial court did not exclude evidence of the prior shooting that Lathrop was involved in. Rather, neither party attempted to introduce evidence of the shooting.

And, to the extent Lathrop is claiming his defense counsel was ineffective for failing to introduce evidence of his prior shooting, that claim also fails. Where there is a legitimate trial tactic that explains counsel's actions, those actions do not constitute ineffective assistance of counsel. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 539, 397 P.3d 90 (2017). The decision to

avoid introducing evidence of a prior shooting where Lathrop was not charged is a legitimate trial tactic to keep the jury focused on the evidence supporting Lathrop's claim that he acted in self-defense in the incident with Delano. Accordingly, not introducing evidence of the prior shooting is not ineffective assistance of counsel.

3. Evidence of Delano Turning Away from Lathrop

Lathrop claims that the prosecutor's argument that Delano was shot while turning away from Lathrop was not supported by the evidence. This claim lacks merit.

Prosecutors have wide latitude to argue reasonable inferences from the evidence. *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011).

Here, Delano testified that he was shot after he was turning away from Lathrop. Although Lathrop testified he shot Delano while Delano was moving toward him, the jury obviously did not find Lathrop's testimony credible. We do not review credibility determinations or reweigh evidence. *See State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Because the prosecutor's argument was based on Delano's testimony, the prosecutor did not argue a claim unsupported by the evidence. Accordingly, this claim lacks merit.

4. Error in State's Response Brief

Lathrop claims that the State erroneously asserted that he was charged with making a false statement. This claim lacks merit.

A SAG is permitted to allow the defendant "to identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." RAP 10.10(a). Asserting a factual error in the State's response brief is not identifying or discussing a matter related to the decision under review. Therefore, this claim is not appropriately raised in a SAG. Accordingly, we do not consider it.

### 5. Evidence Regarding Seeking Medical Treatment

Finally, Lathrop appears to claim that his decision to not seek medical treatment was improperly weighed against him. However, as noted above, we do not make credibility determinations or reweigh evidence. *Thomas*, 150 Wn.2d at 874-75. Therefore, we do not review what weight the jury should have given to Lathrop's decision not to seek medical treatment for his injuries.

### CONCLUSION

The trial court did not err by excluding Lathrop's interview statements to Detective Federici because they were inadmissible hearsay. And Lathrop's SAG claims fail. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, J.

Veljacic, A.C.J.