

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39662-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| E.A.T., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — E.A.T. was found guilty of fourth degree assault after he struck his girlfriend, N.S., in the face while they were wrestling. The juvenile court entered an order on adjudication and disposition. On appeal, E.A.T. contends the court erred by admitting a photograph depicting N.S. holding her cell phone showing an Instagram message that included a screenshot of a message between two other people. E.A.T. contends that the State failed to lay a proper foundation and the photograph was inadmissible hearsay.

We disagree and conclude that the trial court did not abuse its discretion. The photograph was properly admitted as an exhibit after N.S. described it as a true and accurate representation of a message she had received on her cell phone. Additionally,

the message N.S. received on her phone was not hearsay. The message was introduced to explain why N.S. came forward and reported the assault and was not used to prove the truth of the matter asserted, i.e., whether the underlying message itself was true.

E.A.T also appeals several conditions of supervision imposed by the court. As part of his disposition, the court entered three conditions of supervision challenged on appeal: (1) prohibiting E.A.T. from knowingly associating with any person, adult or juvenile, who is under supervision of any court for juvenile offenses or crimes, (2) requiring E.A.T. to obtain a mental health evaluation and comply with treatment recommendations unless otherwise ordered by the court, and (3) mandating that E.A.T. attend all mental health appointments and take medications as prescribed.

We accept the State's concession as to the first supervision condition but find that the second and third were not manifestly unreasonable based on the record before this court. As such, we affirm E.A.T.'s adjudication but remand with instructions to strike the community supervision condition that prohibits E.A.T. from knowingly associating with any person, adult or juvenile, who is under the supervision of any court.

BACKGROUND

On May 30, 2022, N.S. visited her boyfriend, E.A.T., at his house. At the time, N.S. was fifteen and E.A.T. was sixteen, and the two had been dating for a little over a year. On the day of the incident, N.S., E.A.T. and a friend were babysitting E.A.T.'s three younger brothers. The group was hanging out in the living room when E.A.T.

2

became annoyed with one of his brothers for resting his boot on E.A.T.'s head. E.A.T. took the boot off his little brother's foot and threw it at his little brother. N.S. told E.A.T., "don't hit your little brother." Rep. of Proc. (RP) at 38, 40.

E.A.T. stood up, faced N.S., raised his shoulders, and puffed out his chest, which N.S. interpreted as a threat. N.S. stood up because she felt vulnerable sitting down in front of E.A.T. N.S. had difficulty remembering exactly what happened next, but the two ended up "wrestling" one another. When N.S. began crying, their friend intervened and broke them apart. As their friend was pushing them apart, E.A.T. struck N.S. in the face with his fist.

E.A.T. called N.S. a "bitch" and then retreated to his room while N.S. remained in the living room crying. N.S. was consoled by one of E.A.T.'s brothers, and she took a photograph on Snapchat of her crying on the couch with him. After their friend went in to talk to E.A.T., N.S. went into his room, and E.A.T. apologized to N.S., and said "he was sorry and that he wouldn't do it again." RP at 49. Shortly thereafter, N.S. left E.A.T.'s room and eventually went home.

Five months later, N.S. reported the incident to the school police resource officer. The police resource officer referred the incident for prosecution, and the State charged E.A.T. with fourth degree assault.

*Trial*

The case proceeded to trial.  N.S. testified that some friends suggested she speak up about the incident, but she said she was scared and embarrassed.  The State then asked N.S. what prompted her to eventually come forward and report what had happened.  The following exchange occurred:

> [STATE]: Okay.  Can you walk me through—why did you decide that—to come forward and talk to somebody about what happened?
>
> [N.S.]: After he told somebody—this girl that doesn't even live here—that he was going to punch me again, I told his mom.  And then a couple months before this—
>
> [DEFENSE]: Objection, Your Honor—hearsay.
>
> THE COURT: I think she's answering—she hasn't said anything.  I think she's just answering the question.  So the—you want to rephrase your objection, Mr. Rogalinski?
>
> [DEFENSE]: Judge, the part that is hearsay—he said—that he told a girl that he was going to punch her.
>
> THE COURT: Yeah.
>
> [STATE]: That was the statement by the Defendant in opposing party.
>
> THE COURT:  Yeah, and—and here's the Court's view on this—the Court will allow it because it's not going to the truth of the matter asserted. The Court is going to allow the question as it sets a temporal time for why and when this Witness reported this matter.

RP at 52-53.

The State then moved to introduce exhibit 2,[1] which N.S. described as a photograph of a screenshot sent on Instagram from an unidentified individual who sent a screenshot of that person's Instagram with E.A.T.'s profile picture in which E.A.T. said he was going to hit N.S. again. N.S. stated that the screenshot had subsequently been cropped. Defense objected to this evidence on foundational grounds. The court sustained the objection and allowed the State to provide further foundation.

The State continued questioning N.S. about the exhibit. N.S. explained that the thumb located in the cropped photograph was hers because Ms. Ivy, the school police resource officer took a picture of her phone that N.S. was holding in her hand when she reported the incident. N.S. explained the photograph was cropped because the girl that sent it to N.S. took out the part that identified E.A.T.'s Instagram name so that if N.S. did ever go to court, they would not see his name.

The court admitted the exhibit, explaining:

> [T]he Witness has testified that this is a photo of her screenshot. The photo itself was apparently by some other person, namely Ivy [the school police officer], I assume. But this is, at least as I understand, the Witness saying that this is a true and accurate representation, minus the face profile of what she received on her phone.

---

[1] It does not appear that either party designated this exhibit as part of the record on appeal. This hampered our ability to address this issue. Our decision is based on descriptions of the exhibit provided by N.S., the attorneys, and the court. See RAP 9.7(b).

5

RP at 57. The only caveat the court noted was that the exhibit "only indicates what it does and that there is no other name associated, other than what's in the document." RP at 57.

In the exchange of messages, the person that N.S. alleges was E.A.T. said "tell that bitch stop . . . before I sock her ass up again." RP at 60. N.S. interpreted the latter half of the message as meaning E.A.T. was going to hit her again.

On June 1, after N.S. received the Instagram message shown in exhibit 2, N.S. sent the message to E.A.T.'s mom and told her what happened. Later, N.S. told her grandmother and Ms. Benson, the school counselor, what happened. N.S. eventually reported the incident to her school police officer in October 2022. After a bench trial, the court convicted E.A.T. As part of his sentence, the court imposed conditions of supervision including: (1) a prohibition against associating with others under court supervision, (2) requiring a mental health evaluation and to comply with treatment recommendations, and (3) attend all mental health appointments and take medications as prescribed.

E.A.T. timely appeals.

## ANALYSIS

### 1. AUTHENTICATION OF PHOTOGRAPH

E.A.T. contends the court erred when it admitted exhibit 2, which was a photograph taken of N.S. holding her cell phone, depicting a message sent to her on Instagram that

included a screen shot of another message allegedly between E.A.T. and a third person.

E.A.T. argues that the State failed to set a proper foundation to authenticate the message.

A trial court's admission of evidence is reviewed for an abuse of discretion. *State v. Cayetano-Jaimes*, 190 Wn. App. 286, 295, 359 P.3d 919 (2015). A trial court abuses its discretion when its decision is "manifestly unreasonable or based upon untenable grounds or reasons." *State v. Magers*, 164 Wn.2d 174, 181, 189 P.3d 126 (2008) (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

Before a trial court may admit evidence, the evidence must be authenticated. *See* ER 901. "Authentication is a threshold requirement designed to assure that evidence is what it purports to be." *In re Det. of H.N.*, 188 Wn. App. 744, 751, 355 P.3d 294 (2015) (quoting *State v. Payne*, 117 Wn. App. 99, 106, 69 P.3d 889 (2003)). To satisfy the requirements for authentication under ER 901(a), "[t]he party offering the evidence must make a prima facie showing consisting of proof that is sufficient 'to permit a reasonable [factfinder] to find in favor of authenticity or identification.'" *State v. Bashaw*, 169 Wn.2d 133, 140-41, 234 P.3d 195 (2010) (quoting *Payne*, 117 Wn. App. at 106), overruled on other grounds by *State v. Guzman Nunez*, 174 Wn.2d 707, 285 P.3d 21 (2012). Because authenticity is a preliminary determination under ER 104, the court, in making its determination, may consider evidence that might otherwise be objectionable under other rules, such as lay opinions, hearsay, or the proffered evidence itself. *Det. of H.N.*, 188 Wn. App. at 751.

To authenticate a photograph, the proponent must "put forward a witness 'able to give some indication as to when, where, and under what circumstances the photograph was taken, and that the photograph accurately portrays the subject illustrated.'" *State v. Sapp*, 182 Wn. App. 910, 914, 332 P.3d 1058 (2014) (quoting *State v. Newman*, 4 Wn. App. 588, 593, 484 P.2d 473 (1971)). Additionally, the witness need not be the person who took the photograph. *Id*. at 914. As such, this court must determine whether the court abused its discretion by admitting the photograph taken by the school police resource officer that depicted N.S. holding her cell phone, which contained a screenshot of a message sent to her on Instagram.

The trial court did not abuse its discretion when it determined there was proper foundation for exhibit 2. N.S. testified as to when, where, and under what circumstances the photograph was taken. N.S. explained that the message she received on her phone prompted her to contact E.A.T.'s mother. After defense counsel objected, the State provided further foundation. Notably, the foundation laid was to authenticate the photograph taken of N.S., holding her phone, not the contents or substance of the Instagram social media message itself.

N.S. explained that the finger depicted in exhibit 2 was hers because the school police resource officer took a picture of N.S.'s phone that was in N.S.'s hand. In addition, she explained that she knew Ms. Ivy who took the photograph because she was the school police officer. The trial court acknowledged the multiple layers of

communication in this exhibit and recognized that N.S. could not authenticate the alleged

message between E.A.T. and a third person.  But she could testify that the picture was a

true and accurate depiction of her phone showing the message she had received.   The

trial court's decision to authenticate this exhibit was thus not based on untenable grounds

or untenable reasons.

E.A.T.'s argument largely rests on the fact that E.A.T.'s Instagram profile picture

was cropped that was admitted to the court.  He contends there needed to be a proper

foundation laid to demonstrate he sent the message.  However, the contents of the

message or who sent it is not what N.S. was authenticating.  And to reiterate this, the

court clarified on the record that the photograph only indicates "what it does" and outside

of that, there are "no other names associated, other than what's in the document."  RP at

57.  The court did not rule the exhibit was authenticated as far as who sent the underlying

message.  The court's ruling thus narrowed the scope of the exhibit, defeating E.A.T.'s

argument.

2.   HEARSAY OBJECTION

Next, E.A.T. contends that the court erred by admitting exhibit 2 because it

contained hearsay evidence.  We disagree.

"'Hearsay' is a statement, other than one made by the declarant while testifying at

the trial or hearing, offered in evidence to prove the truth of the matter asserted."  ER

801(c).  Hearsay evidence is generally inadmissible.  ER 802.  "However, out-of-court

statements may be admissible if they satisfy a hearsay exception or if offered for a purpose other than the truth of the matter asserted." ER 803(a); ER 801(d); *State v. City of Sunnyside*, 3 Wn.3d 279, 296 n.9, 550 P.3d 31 (2024).

"'Whether a statement is hearsay depends upon the purpose for which the statement is offered.'" *State v. Gonzalez-Gonzalez*, 193 Wn. App. 683, 689, 370 P.3d 989 (2016) (quoting *State v. Crowder*, 103 Wn. App. 20, 26, 11 P.3d 828 (2000)). If a statement is "offered for the truth of what someone told a witness, the statement is hearsay." *State v. Rocha*, 21 Wn. App. 2d 26, 31, 504 P.3d 233 (2022). However, if a statement is used only to show the effect on the listener, without regard to the truth of the statement, then it is not hearsay. *Gonzalez-Gonzalez*, 193 Wn. App. at 690. When a party argues the statement was offered for another purpose other than to prove its truth, the court considers whether the other purpose was relevant. *Rocha*, 21 Wn. App. 2d at 31.

Here, the State asked N.S. what made her "come forward and talk to somebody about what happened." RP at 52-53. She responded that she came forward after receiving a message suggesting that E.A.T. was telling another person he would hit N.S. again. This statement was not hearsay because it was not offered to prove the truth of the matter asserted–that E.A.T. said he was going to assault her again–but instead, to show the reason that N.S. reported the incident to his mother.

E.A.T. seems to argue that the statement did not demonstrate why N.S. reported the incident because she waited an additional five months after receiving this message to report the assault to her school police resource officer. This argument fails for two reasons. First, when asked this question, N.S. stated this is why she told E.A.T.'s mother, which occurred within days after the incident. N.S. was not referring to her school police resource officer. Second, regardless of whether N.S.'s statement about her motivations was credible, it does not change the reason for introducing the message N.S. claimed to have received on her phone.

E.A.T. also argues that N.S.'s motivation for reporting the incident was not relevant. However, evidence will be considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The threshold is very low, and even "minimally relevant evidence is admissible." *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). Although N.S. explained why she reported to E.A.T.'s mother, the question was clearly aimed at asking why N.S. took five months to report the incident to the school police resource officer. Delayed reporting could be considered a flaw in the State's case or that N.S. was not being truthful or possibly fabricating the incident. And, much of the State's case rested on N.S.'s testimony. Thus, identifying to the court why N.S. delayed her reporting boosts her credibility as the sole witness and is thus relevant.

The trial court did not err by admitting inadmissible hearsay, because the statement was not offered to prove the truth of the matter asserted.

3.   CONDITIONS OF SUPERVISION

E.A.T. contends the court abused its discretion by imposing several conditions of community supervision that are unlawful. E.A.T. contends the court erred when it entered supervision conditions (1) prohibiting him from knowingly associating with any person, adult or juvenile, who is under the supervision of any court, (2) requiring a mental health evaluation and to comply with treatment recommendations, and (3) attend all mental health appointments and take medications as prescribed. The State has no objection to striking the first condition but contends the second and third condition are directly related to the crime.

A juvenile court has "considerable discretion to fashion an individualized rehabilitation disposition that includes a broad range of community supervision conditions." *State v. D.H.*, 102 Wn. App. 620, 629, 9 P.3d 253 (2000). We review such conditions for "abuse of discretion and will reverse if a condition is manifestly unreasonable." *State v. J.H.-M.*, 28 Wn. App. 2d 757, 761, 538 P.3d 644 (2023).

As an initial matter, the State notes it has "no objection to striking the prohibition on contact with people who are convicted of crimes," explaining that E.A.T. was recently involved in and plead guilty to his involvement in a gang related drive-by shooting and was sentenced to time in juvenile rehabilitation. For this reason, the State believes that

the juvenile rehabilitation parole satisfied the State's interest in the prohibition of contact with people convicted of crimes. Because the State does not otherwise defend the condition on appeal, we accept the State's concession for this condition.

Next, E.A.T. contends the court erred when it ordered certain mental health conditions. Based on the record, the supervision conditions were not an abuse of discretion. E.A.T.'s reaction was extreme to a relatively minor annoyance, suggesting there may be an underlying unresolved mental health issue. As such, it was not manifestly unreasonable for the court to impose a mental health evaluation. Likewise, it was not manifestly unreasonable for the court to require E.A.T. to attend all mental health appointments and take medications as prescribed based on the results of the mental health evaluation.

E.A.T. argues that there were no specific findings related to his mental health. However, E.A.T. does not provide any authority that states it is an abuse of discretion for a juvenile court to impose mental health treatment absent an explicit finding related to mental health. Generally, this court is not required to consider arguments that are not supported by legal authority. *See State ex rel. Schwab v. Wash. State Bar Ass'n.*, 80 Wn.2d 266, 268, 493 P.2d 1237 (1972).

We affirm E.A.T.'s adjudication for misdemeanor assault. We remand for the court to strike the condition of supervision prohibiting E.A.T. from contacting people

No. 39662-2-III
*State v. E.A.T.*

who are under the supervision of any court and otherwise affirm the remaining conditions

of supervision.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Cooney, J.